T.C. Memo. 2003-52

UNITED STATES TAX COURT

NU-LOOK DESIGN, INC., Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 10368-01.          Filed February 26, 2003.

<u>Joseph H. O'Donnell, Jr.</u>, for petitioner.

<u>Robin W. Denick</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

COHEN, <u>Judge</u>:  The petition in this case was filed in
response to a Notice of Determination Concerning Worker
Classification Under Section 7436 (notice of determination)
regarding petitioner's liabilities pursuant to the Federal
Insurance Contributions Act (FICA) and the Federal Unemployment
Tax Act (FUTA) for 1996, 1997, and 1998.  The issues for decision

are: (1) Whether Ronald A. Stark (Stark) was an employee of petitioner for Federal employment tax purposes during 1996 through 1998 and, if so, (2) whether petitioner is entitled to relief under section 530 of the Revenue Act of 1978, Pub. L. 95-600, 92 Stat. 2885, as amended (Section 530).

Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. For convenience, FICA and FUTA taxes are collectively referred to as employment taxes.

FINDINGS OF FACT

Some of the facts were deemed stipulated pursuant to Rule 91(f); certain additional facts have been stipulated by the parties. The stipulated facts are incorporated in our findings by this reference.

Petitioner's Organization and Operations

Stark has been in the home improvement business since 1963. After operating his business as a sole proprietorship from 1963 through 1986, Stark decided to incorporate for the purpose of obtaining the benefits of limited shareholder liability for debts of the corporation. Petitioner was incorporated in Pennsylvania on January 20, 1987, and has at all relevant times operated as an S corporation. Petitioner's principal place of business was

located in New Hope, Pennsylvania, at the address of Stark's personal residence, when the petition was filed in this case.

Since its organization, petitioner has operated as a residential home improvement company, providing carpentry, siding installation, and general residential home improvement and construction services to the public. This activity was and is petitioner's only business and only source of income. Stark has been the sole shareholder of petitioner from the time of its incorporation and throughout 1996, 1997, and 1998.

Stark has at all times served as petitioner's president and only officer. Minutes from petitioner's annual meetings of directors and shareholders reflect that, for each of the years in issue, Stark was elected president, vice president, secretary, and treasurer. Stark was also petitioner's sole director. During 1996, 1997, and 1998, Stark performed the following services for petitioner: (1) Solicited business on behalf of petitioner; (2) ordered petitioner's supplies; (3) entered into verbal and/or written agreements on behalf of petitioner; (4) oversaw the finances of petitioner; (5) collected moneys owed petitioner; (6) managed petitioner; (7) supervised work performed on behalf of petitioner; (8) acquired customers for petitioner; (9) performed all bookkeeping services for petitioner; and (10) made all hiring decisions and paid all individuals who performed services in connection with petitioner's residential

home improvement business. Stark controlled the day-to-day activities of petitioner.

During 1996, 1997, and 1998, all moneys that were paid on accounts receivable of petitioner were deposited into petitioner's checking account. Stark was the only person with signature authority on petitioner's account. Petitioner did not make regular payments at fixed times to Stark for his services. Rather, Stark obtained funds from petitioner's bank account to pay himself as his needs arose. Petitioner neither classified any payment as a dividend nor distributed any dividends to shareholders from 1996 through 1998.

Petitioner's Tax Reporting

Petitioner filed Forms 1120S, U.S. Income Tax Return for an S Corporation, and related schedules, for 1987 through 1995. On these returns, petitioner did not report treating Stark, or any other individual, as an employee of petitioner.

Petitioner filed a Form 1120S for each of the years 1996, 1997, and 1998. Petitioner reported ordinary income from its trade or business of $10,866.14, $14,216.37, and $7,103.60 for 1996, 1997, and 1998, respectively. Petitioner claimed no deduction either for compensation of officers or for salaries and wages. Schedules K-1, Shareholder's Share of Income, Credits, Deductions, etc., attached to the returns show $10,866.14 for 1996, $14,216.37 for 1997, and $7,103.60 for 1998 as the pro rata

share of, and as a property distribution other than a dividend to, Stark. Petitioner's Forms 1120S were signed by Stark as president and by Joseph M. Grey (Grey) as preparer.

During the period from 1996 to 1998, petitioner did not issue any Forms 1099-MISC, Miscellaneous Income, or Forms W-2, Wage and Tax Statement, to Stark. Throughout the years in issue, petitioner did not report paying Stark a salary or wages for work he performed on behalf of petitioner. Petitioner did issue separate Forms 1099-MISC in 1996, 1997, and 1998 reporting nonemployee compensation to a number of individuals other than Stark, presumably independent contractors hired to perform various aspects of petitioner's remodeling work.

Petitioner did not file a Form 941, Employer's Quarterly Federal Tax Return, for any quarter in 1996, 1997, or 1998 or a Form 940, Employer's Annual Federal Unemployment (FUTA) Tax Return, for 1996, 1997, or 1998.

Stark's Tax Reporting

For each of the years 1996, 1997, and 1998, Stark timely filed a Form 1040, U.S. Individual Income Tax Return. On these returns, Stark reported as ordinary income from "Rental real estate, royalties, partnerships, S corporations, trusts, etc." $10,866.14, $14,216.37, and $7,103.60 for 1996, 1997, and 1998, respectively. Attached Schedules E, Supplemental Income and

Loss, characterize the foregoing amounts as nonpassive income from Schedules K-1.

The Notice of Determination

Prior to the audit underlying the instant case covering 1996, 1997, and 1998, respondent neither audited petitioner for employment tax purposes nor challenged petitioner's treatment of Stark as other than an employee. Thereafter, on June 8, 2001, respondent sent to petitioner the notice of determination at issue in this proceeding. The notice was based on a determination that Stark was to be legally classified as an employee for purposes of Federal employment taxes and that petitioner was not entitled to relief from such classification pursuant to Section 530. Enclosed with the notice was a schedule setting forth petitioner's liabilities for FICA and FUTA taxes.

It is stipulated that, if the Court decides that Stark is to be classified as an employee for Federal employment tax purposes for all periods in 1996, 1997, and 1998, the amounts of taxes due and owing are as set forth in the notice of determination. Conversely, if the Court decides that Stark should not be classified as an employee for any of the periods in issue, the parties agree that petitioner owes no employment taxes.

ULTIMATE FINDINGS OF FACT

Stark, as president of petitioner, performed more than minor services and received remuneration therefor.

Petitioner did not have a reasonable basis for failing to treat Stark as an employee during the years in issue.

OPINION

I. Statutory and Regulatory Provisions

A. Subtitle C of the Internal Revenue Code

Subtitle C of the Internal Revenue Code governs payment of employment taxes. In particular, sections 3111 and 3301 impose taxes on employers under FICA (pertaining to Social Security) and FUTA (pertaining to unemployment), respectively, based on wages paid to employees. The term "wages" as used in these statutes generally encompasses "all remuneration for employment". Secs. 3121(a), 3306(b). "Employee" is defined for purposes of FICA taxes in section 3121(d), and, with modifications not germane here, section 3306(i) makes this definition applicable for purposes of FUTA taxes as well. Section 3121(d) provides:

> SEC. 3121(d). Employee.--For purposes of this chapter, the term "employee" means--
>
> (1) any officer of a corporation; or
>
> (2) any individual who, under the usual common law rules applicable in determining the employer-employee relationship, has the status of an employee; or
>
> (3) any individual (other than an individual who is an employee under paragraph (1) or (2)) who performs services for remuneration for any person--
>
> (A) as an agent-driver or commission-driver * * *;

                        (B) as a full-time insurance salesman;

                        (C) as a home worker * * *; or

                        (D) as a traveling or city salesman
                  * * *;

            * * * [under specified conditions]; or

                  (4) any individual who performs services that
            are included under an agreement entered into
            pursuant to section 218 of the Social Security
            Act.

    Regulations promulgated under section 3121(d) clarify the

scope of the inclusion in paragraph (1) for corporate officers,

as follows:

    Generally, an officer of a corporation is an employee
    of the corporation.  However, an officer of a
    corporation who as such does not perform any services
    or performs only minor services and who neither
    receives nor is entitled to receive, directly or
    indirectly, any remuneration is considered not to be an
    employee of the corporation. * * * [Sec. 31.3121(d)-
    1(b), Employment Tax Regs.]

Identical language is also included in regulations promulgated

under section 3306.  Sec. 31.3306(i)-1(e), Employment Tax Regs.

    B.  Section 530 of the Revenue Act of 1978

    Section 530 operates in enumerated circumstances to afford

relief from employment tax liability, notwithstanding the actual

relationship between the taxpayer and the individual performing

services.  The statute provides, in part:

    SEC. 530.  CONTROVERSIES INVOLVING WHETHER INDIVIDUALS
    ARE EMPLOYEES FOR PURPOSES OF THE EMPLOYMENT TAXES.

        (a) Termination of Certain Employment Tax
    Liability.--

(1) In general.--If--

(A) for purposes of employment taxes, the taxpayer did not treat an individual as an employee for any period, and

(B) in the case of periods after December 31, 1978, all Federal tax returns (including information returns) required to be filed by the taxpayer with respect to such individual for such period are filed on a basis consistent with the taxpayer's treatment of such individual as not being an employee,
then, for purposes of applying such taxes for such period with respect to the taxpayer, the individual shall be deemed not to be an employee unless the taxpayer had no reasonable basis for not treating such individual as an employee.

(2) Statutory standards providing one method of satisfying the requirements of paragraph (1).-- For purposes of paragraph (1), a taxpayer shall in any case be treated as having a reasonable basis for not treating an individual as an employee for a period if the taxpayer's treatment of such individual for such period was in reasonable reliance on any of the following:

(A) judicial precedent, published rulings, technical advice with respect to the taxpayer, or a letter ruling to the taxpayer;

(B) a past Internal Revenue Service audit of the taxpayer in which there was no assessment attributable to the treatment (for employment tax purposes) of the individuals holding positions substantially similar to the position held by this individual; or

(C) long-standing recognized practice of a significant segment of the industry in which such individual was engaged.

In specified circumstances, Section 530(e)(4) places the

burden of proof on the Commissioner with respect to certain

issues under Section 530, but this provision does not affect our

analysis here.  Section 530(e)(4) applies only to periods after

December 31, 1996, so has no bearing on petitioner's liabilities for 1996.  Small Business Job Protection Act of 1996, Pub. L. 104-188, sec. 1122(b)(3), 110 Stat. 1767.  For subsequent periods, a taxpayer desiring to take advantage of Section 530(e)(4) first must establish a prima facie case that it was reasonable not to treat an individual as an employee and must have fully cooperated with the Secretary.  Because, as explained in detail below, petitioner did not establish a prima facie case that its treatment of Stark was reasonable, the burden of proof remains on petitioner with respect to 1997 and 1998 as well.

II.  Classification of Stark for Employment Tax Purposes

A.  Status Under FICA and FUTA Provisions

In contending that Stark should not be classified as an employee under the FICA and FUTA provisions of the Internal Revenue Code, petitioner focuses on Stark's status as an S corporation shareholder and alleged lack of status as a common law employee.  We briefly address these contentions seriatim.

1.  Contentions Regarding S Corporation Shareholders

Petitioner cites sections 1366, 1372, and 6037(c) and Durando v. United States, 70 F.3d 548 (9th Cir. 1995), presumably in support of an argument that S corporation shareholders should not be deemed employees.  Sections 1366 and 6037(c) generally require that income items of S corporations be passed through to shareholders on a pro rata basis and reported by such

shareholders in a manner consistent with treatment on the corporate return.  These rules, however, pertain to calculation of income tax liability under subtitle A and have no bearing on computation of Federal employment taxes.  <u>Veterinary Surgical Consultants, P.C. v. Commissioner</u>, 117 T.C. 141, 145 (2001), affd. sub nom. <u>Yeagle Drywall Co. v. Commissioner</u>, 54 Fed. Appx. 100 (3d Cir. 2002).  Furthermore, an employer cannot by the expedient of characterizing moneys paid in remuneration for services as distributions of net income, rather than as wages, avoid FICA and FUTA liabilities.  <u>Id.</u> at 145-146.  Thus, as in <u>Veterinary Surgical Consultants, P.C. v. Commissioner</u>, <u>supra</u> at 145-146, and <u>Joseph M. Grey Pub. Accountant, P.C. v. Commissioner</u>, 119 T.C. 121, 128 (2002), we reject any suggestion that petitioner's passing through of its net income to Stark precludes the finding of an employer-employee relationship between petitioner and Stark.  We likewise reject as not germane to the question before us petitioner's reliance on section 1372, addressing fringe benefits under subtitle A, and the reference to that statute in <u>Durando v. United States</u>, <u>supra</u> at 551.  See <u>Veterinary Surgical Consultants, P.C. v. Commissioner</u>, <u>supra</u> at 147-148, 150.

    2.  <u>Contentions Regarding Common Law Employment</u>

Petitioner contends that "employee" as used throughout section 3121(d) must be construed in a manner consistent with its

use in section 3121(d)(2), such that the usual common law rules for determining existence of an employer-employee relationship are to be taken into account. In support of this position, petitioner quotes the following passage from Tex. Carbonate Co. v. Phinney, 307 F.2d 289, 291-292 (5th Cir. 1962):

> The statutory definition of "employees" as including officers of a corporation will not be so construed as to mean that an officer is an employee per se. Only such officers as work for it in fact are to be so included and, in determining whether an officer is an employee within the meaning of the statutes the usual employer-employee tests are to be applied. * * *

Petitioner further emphasizes that common law focuses on whether the alleged employer held the right to control the details of the work performed by the individual and argues that petitioner had neither the authority nor the ability to exert control over Stark. There exist, however, at least two fatal defects in petitioner's arguments in this regard.

First, from the standpoint of statutory construction, the premise underlying petitioner's position finds no support either in the structure of the text or in the Tex. Carbonate Co. v. Phinney, supra, decision. Section 3121(d) is written in the disjunctive, with each of the four paragraphs expressly separated from the next by "or". Accordingly, each paragraph affords a separate and independent basis for deeming one engaged to perform services an employee. Individuals described in paragraphs (1), (3), and (4) of section 3121(d) are therefore frequently referred

to as "statutory" employees, subject to FICA and FUTA regardless of their status under common law.  See Joseph M. Grey Pub. Accountant, P.C. v. Commissioner, supra at 126.

Moreover, Tex. Carbonate Co. v. Phinney, supra, is not authority to the contrary.  Significant regulatory and statutory developments have occurred since the years in issue in that case. Given that sections 31.3121(d)-1(b) and 31.3306(i)-1(e), Employment Tax Regs., were promulgated after those years and that the FUTA definition of "employee" then in effect appears to have contemplated a corporate officer who could be an independent contractor under common law, see, e.g., sec. 1607(i), I.R.C. 1939, the Court of Appeals' statements concerning common law rules "may no longer be relevant." Joseph M. Grey Pub. Accountant, P.C. v. Commissioner, supra at 128 n.4.  The opinion in Tex. Carbonate Co. v. Phinney, supra at 291, recognized that, regardless of the test purportedly being applied, "such officers as work for * * * [a corporation] in fact" are included as employees.  The court also addressed the impact of an alleged absence of control in that case, as follows:

> Even though an absence of control is shown, and this as we have noted has not been done, the force of the factor is diminished to near de minimis by the fact that * * * [the service provider] himself was a member of the Board of Directors, a Vice President, and the executive of the Company in charge of its sales and the development of its markets. * * * [Id. at 292.]

Hence, critical components of the analysis in <u>Tex. Carbonate Co.</u> <u>v. Phinney</u>, <u>supra</u>, are consistent with the current regulatory approach to officers and contrary to petitioner's position.

Second, from a factual standpoint, even if the common law control factor were pertinent to our evaluation, petitioner has failed to establish a lack of control over Stark in the performance of his services.  As in <u>Joseph M. Grey Pub.</u> <u>Accountant, P.C. v. Commissioner</u>, <u>supra</u> at 128-129, to accept petitioner's contentions in this regard would be the equivalent of disregarding the corporate form in which Stark chose to conduct his business.  Caselaw does not permit a taxpayer to use his or her dual role as a shareholder of and service provider to a corporation as grounds for ignoring the legal ramifications of the business construct so selected.  <u>Moline Props., Inc. v.</u> <u>Commissioner</u>, 319 U.S. 436, 438-439 (1943); <u>Joseph M. Grey Pub.</u> <u>Accountant, P.C. v. Commissioner</u>, <u>supra</u> at 129.

### 3.  Application of Section 3121(d)(1)

On the basis of the foregoing analysis, application of section 3121(d)(1) is not precluded or limited here by considerations pertaining to Stark's status as an S corporation shareholder or under the common law.  Section 3121(d)(1) and sections 31.3121(d)-1(b) and 31.3306(i)-1(e), Employment Tax Regs., specify that corporate officers are to be classified as employees if they perform more than minor services and receive or

are entitled to receive remuneration.  The overwhelming weight of the evidence here shows that Stark's activities vis-a-vis petitioner met these criteria.  (Accordingly, considerations with respect to burden of proof do not affect our analysis on this point.)  Stark at all relevant times served as petitioner's president and worked in all significant aspects of petitioner's business operations.  Stark also obtained remuneration from petitioner's bank account as his needs arose.

Furthermore, although section 3121(d)(1) may be inapplicable to the extent that an officer performs services in some other capacity, i.e., as an independent contractor, petitioner has neither contended nor offered evidence that Stark worked for or was engaged by petitioner in a capacity other than as an officer. See Joseph M. Grey Pub. Accountant, P.C. v. Commissioner, 119 T.C. at 129-130; Rev. Rul. 82-83, 1982-1 C.B. 151, 152.  Hence, we conclude that Stark was an employee of petitioner for employment tax purposes, in accordance with section 3121(d)(1).

B.  Availability of Section 530 Relief

Section 530 affords relief from employment tax liability, notwithstanding an adverse classification, where the following three requirements are satisfied:  (1) The taxpayer has not treated the individual, or any individual holding a substantially similar position, as an employee for any period; (2) the taxpayer has consistently treated the individual as not being an employee

on all tax returns for periods after December 31, 1978; and (3) the taxpayer has a reasonable basis for not treating the individual as an employee. Sec. 530(a)(1), (3). With respect to the case at bar, respondent has conceded that petitioner meets the first of the above requirements and does not argue that petitioner fails to meet the second. Rather, the parties dispute whether petitioner had a reasonable basis for not treating Stark as an employee.

Concerning the existence of a reasonable basis for purposes of Section 530(a)(1), Section 530(a)(2) sets forth three statutory safe havens. Reliance upon any of the circumstances enumerated in subparagraph (A), (B), or (C) of Section 530(a)(2) is deemed sufficient to establish the requisite reasonable basis.

Subparagraph (A) lists judicial precedent, published rulings, technical advice with respect to the taxpayer, or a letter ruling to the taxpayer. The amended petition alleges:

> The Petitioner did not treat its Sole Shareholder, Ronald A. Stark, as an employee during any part of 1996, 1997 and 1998, and the reasonable basis for not treating Ronald A. Stark as an employee for the said periods is based on judicial precedent contained in the opinion of the 5th Circuit Court of Appeals in Texas Carbonate Company v. R.L. Phinney, 307 F.2d 289 (5th Cir.), cert denied, 371 U.S. 940 (1962).

On brief, petitioner reiterates reliance on Tex. Carbonate Co. v. Phinney, 307 F.2d 289 (5th Cir. 1962), and cites as well to Automated Typesetting, Inc. v. United States, 527 F. Supp. 515 (E.D. Wis. 1981), in support of the premise that petitioner

reasonably looked to common law control concepts in classifying Stark.

For the reasons previously discussed, Tex. Carbonate Co. v. Phinney, supra, does not afford a reasonable basis for disregard of the explicit rules of section 3121(d)(1) and sections 31.3121(d)-1(b) and 31.3306(i)-1(e), Employment Tax Regs. Equally unavailing in this regard is Automated Typesetting, Inc. v. United States, supra. The District Court in that case simply evaluated the employment relationship of the involved individuals both through a common law analysis and through application of the provisions relating to corporate officers. Id. at 519-522. In deciding that the individuals qualified as employees under either rubric, the court did not repudiate the statutory treatment of corporate executives. Id. at 520, 522; see also Joseph M. Grey Pub. Accountant, P.C. v. Commissioner, supra at 129 n.5.

Moreover, even if we were to assume arguendo that the cited cases could offer a reasonable basis for treating an officer as a nonemployee, petitioner has failed to establish reliance on the claimed precedent as a factual matter. To fall within the safe harbors of Section 530(a)(2), the taxpayer must have relied on the alleged authority during the periods in issue, at the time the employment decisions were being made. The statute does not countenance ex post facto justification. See 303 W. 42nd St. Enters., Inc. v. IRS, 181 F.3d 272, 277, 279 (2d Cir. 1999)

(reversing and remanding because it was "unclear from the record whether * * * [the taxpayer] in fact relied on any specific industry practice in reaching its decision to treat its * * * [workers] as non-employee tenants, let alone whether such reliance was reasonable"); Select Rehab, Inc. v. United States, 205 F. Supp. 2d 376, 380 (M.D. Pa. 2002) ("The taxpayer must show that it relied upon those grounds [alleged as a reasonable basis], and that the reliance was reasonable."); W. Va. Pers. Servs., Inc. v. United States, 78 AFTR 2d 96-6600, at 96-6608, 96-2 USTC par. 50,554, at 85,919 (S.D. W. Va. 1996) ("The plain meaning of section 530(a)(2) is that only evidence known to and relied upon by the taxpayer is relevant.  Facts that are learned after the incorrect treatment of the employees * * * are not facts that a taxpayer relied upon in making its original decision regarding how to treat its employees.").

Until a few months before trial, petitioner did not purport to rely on Section 530 or the bases described therein and expressly disclaimed any dependence on the statute.  Petitioner's present claim of reliance is not credible.  At trial, Stark testified as a witness but presented no evidence that he was aware of Tex. Carbonate Co. v. Phinney, supra, or that anyone had ever discussed the case with him.

Petitioner proposed to call Grey, the accountant who advised petitioner and prepared petitioner's tax returns.  Grey was not

allowed to testify in this case because he had not been listed as a witness in petitioner's trial memorandum, in violation of this Court's Standing Pre-Trial Order.  See Rule 131(b).  His testimony, in any event, would not have made a difference.  See Veterinary Surgical Consultants, P.C. v. Commissioner, T.C. Memo. 2003-48 (where Grey testified that he was unaware of the Tex. Carbonate Co. v. Phinney, supra, case until posttrial briefing, during the fall of 2001, in Joseph M. Grey Pub. Accountant, P.C. v. Commissioner, 119 T.C. 121 (2002)).  Petitioner failed to establish that it relied on judicial precedent or, for that matter, on any of the other sources specified in Section 530(a)(2)(A).  Accordingly, we conclude that subparagraph (A) does not aid petitioner here.

The same result obtains with respect to subparagraphs (B) and (C).  The parties have stipulated that respondent did not audit petitioner for employment tax purposes prior to the examination underlying the present case.  Petitioner therefore cannot show reliance on a past audit under Section 530(a)(2)(B). Likewise, petitioner has adduced no evidence of conventions in the residential home improvement industry to establish longstanding industry practice under Section 530(a)(2)(C).  The safe havens of Section 530(a)(2) are therefore inapplicable on the record before us.

In seeking to establish a reasonable basis for Stark's treatment apart from the safe havens, petitioner quotes from the following definition of "employment status" in Section 530(c)(2): "The term 'employment status' means the status of an individual, under the usual common law rules applicable in determining the employer-employee relationship, as an employee or as an independent contractor (or other individual who is not an employee)." Petitioner apparently believes that the purported lack of common law control makes its treatment of Stark reasonable within the meaning of Section 530 and that the above definition supports this view.

Again, however, petitioner's approach is contrary to controlling statutes and to the facts of this case. As a matter of construction, Section 530(c)(2) defines employment status for purposes of certain provisions of Section 530 not germane here. It does not purport to override or interpret the definition of "employee" in section 3121(d) and related regulations. Hence, Section 530(c)(2) does not render it rational for petitioner to have ignored the statutory mandate regarding corporate officers and to have taken a position that was not otherwise supported by authority. Petitioner also does not claim in actuality to have relied on Section 530(c)(2) in deciding not to treat Stark as an employee in 1996, 1997, or 1998. We conclude and have found as a fact that petitioner did not have a reasonable basis for failing

to characterize Stark as an employee.  Consequently, relief from employment tax liability is not available to petitioner under Section 530.

Lastly, in connection with Section 530, petitioner raises a due process argument.  This issue has never been properly pled by petitioner.  Rather, petitioner mentioned due process in its motion for leave to file an amended petition, did not allege a due process violation in the amended petition itself, and argued the matter only on brief.  Generally, issues not properly raised prior to briefing will not be considered when to do so would prevent the opposing party from presenting evidence that might have been offered if the issue had been timely raised.  DiLeo v. Commissioner, 96 T.C. 858, 891 (1991), affd. 959 F.2d 16 (2d Cir. 1992); Shelby U.S. Distribs., Inc. v. Commissioner, 71 T.C. 874, 885 (1979).  Here, however, even if we were to treat the due process issue as appropriately before us, petitioner's position is without merit.

Section 530(e)(1) provides that the Internal Revenue Service "shall, before or at the commencement of any audit inquiry relating to the employment status of one or more individuals who perform services for the taxpayer, provide the taxpayer with a written notice of the provisions of this section."  Small Business Job Protection Act of 1996 sec. 1122(a), 110 Stat. 1766.  On brief, petitioner alleges that it learned of the existence of

Section 530 only through the June 8, 2001, notice of determination, which postdated by a substantial margin the commencement on August 6, 1999, of the underlying employment tax audit. Petitioner then states:

> the inaction of Respondent in not providing the required notice to Petitioner is a serious Constitutional violation of due process, and Petitioner moves this Court to allow Petitioner to recover its legal fees, since the conduct of the Respondent is so egregious in this matter.

To the extent that petitioner's due process contentions take the form of a claim for litigation or administrative costs and fees under section 7430, such claim is premature. Rule 231(a)(2), as pertinent here, specifies that the appropriate time to seek recovery of legal costs follows service of a written opinion. See McWilliams v. Commissioner, 104 T.C. 320, 327 (1995); Groetzinger v. Commissioner, 87 T.C. 533, 548 (1986).

Furthermore, even if petitioner's allegations might be read as a plea encompassing other remedies, petitioner has failed to show that its situation satisfies the prerequisites for relief under the Due Process Clause. As this Court has noted, even in a criminal context defendants are generally required to establish actual prejudice in order to obtain due process relief. Riland v. Commissioner, 79 T.C. 185, 197-198 (1982) (involving a claimed denial of due process on account of delay in issuance of the subject deficiency notice). The record in the instant case is devoid of evidence of such prejudice. Although petitioner was

made aware of Section 530 at least prior to filing its petition with the Court, petitioner failed therein to raise the statute. Nonetheless, petitioner was subsequently granted leave to file an amended petition specifically to place at issue its right to relief under Section 530. The matter (of substantive relief under Section 530(a), not, as previously noted, of a due process violation based on Section 530(e)(1) notice procedures) therefore was properly before the Court at trial, and petitioner was afforded an opportunity to be heard. Accordingly, no actual prejudice was sustained.

The above analysis is consistent with our recent jurisprudence on the notice provision contained in section 3463(a) of the Internal Revenue Service Restructuring and Reform Act of 1998, Pub. L. 105-206, 112 Stat. 767. In Smith v. Commissioner, 114 T.C. 489 (2000), affd. 275 F.3d 912 (10th Cir. 2001), we considered this requirement that the Commissioner include on each notice of deficiency the last date for filing a petition with the Tax Court. We held that, where the Commissioner failed to place such date on the notice, but the taxpayers nonetheless received the notice and filed a petition in a timely manner, the notice was valid. Id. at 492. In so holding, we noted the absence of any delay prejudicial to the taxpayers' ability to petition the Court. Id. at 491-492.

Thus, failure to comply with certain procedural notice requirements does not rise to the level of a denial of due process where, as here, the taxpayer's opportunity to present its position is not prejudiced.

C. <u>Conclusion</u>

We hold that Stark is an employee of petitioner pursuant to section 3121(d)(1) and that petitioner is not entitled to relief under Section 530. Accordingly, petitioner is liable for FICA and FUTA taxes for the periods in issue as set forth in respondent's notice of determination and relevant stipulations.

To reflect the foregoing,

<u>Decision will be entered for respondent and in accordance with stipulations as to amounts</u>.