T.C. Memo. 2007-222

UNITED STATES TAX COURT

COLORADO MUFFLERS UNLIMITED, INC., Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 4083-04.                    Filed August 13, 2007.

Dolores Rudd (an officer), for petitioner.

<u>David A. Conrad</u> and <u>Milan Kim</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

MARVEL, <u>Judge</u>:  In a Notice of Determination of Worker
Classification (notice of determination) under section 7436,[1]
respondent determined that nine workers were employees of

_____

[1]Unless otherwise indicated, all section references are to
the Internal Revenue Code as in effect for the periods in issue,
and all Rule references are to the Tax Court Rules of Practice
and Procedure.

petitioner during 2000 and 2001 and that petitioner was liable for Federal Insurance Contributions Act (FICA) taxes, income tax withholding, and Federal Unemployment Tax Act (FUTA) taxes, the section 6662 accuracy-related penalty, and the addition to tax under section 6651(a)(1) in the following amounts:

|  | Taxable period ended 2000 | | | | |
| Tax/addition/penalty | Mar. 31 | June 30 | Sept. 30 | Dec. 31 | Total |
|---|---|---|---|---|---|
| FICA | $6,200.18 | $6,200.18 | $6,200.18 | $6,200.18 | $24,800.72 |
| Income tax | 11,346.72 | 11,346.72 | 11,346.72 | 11,346.72 | 45,386.88 |
| Sec. 6651(a)(1) | 4,386.73 | 4,386.73 | 4,386.73 | 4,386.73 | 17,546.92 |
| Sec. 6662 | 3,509.38 | 3,509.38 | 3,509.38 | 3,509.38 | 14,037.52 |
| FUTA | --- | --- | --- | 3,337.83 | 3,337.83 |
| Sec. 6651(a)(1) | --- | --- | --- | 834.46 | 834.46 |
| Sec. 6662 | --- | --- | --- | 667.57 | 667.57 |
| Total | 25,443.01 | 25,443.01 | 25,443.01 | 30,282.87 | 106,611.90 |

|  | Taxable period ended 2001 | | | | |
| Tax/addition/penalty | Mar. 31 | June 30 | Sept. 30 | Dec. 31 | Total |
|---|---|---|---|---|---|
| FICA | $6,200.17 | $6,200.17 | $6,200.17 | $6,200.17 | $24,800.68 |
| Income tax | 11,346.72 | 11,346.72 | 11,346.72 | 11,346.72 | 45,386.88 |
| Sec. 6651(a)(1) | 4,386.73 | 4,386.73 | 4,386.73 | 4,386.73 | 17,546.92 |
| Sec. 6662 | 3,509.38 | 3,509.38 | 3,509.38 | 3,509.38 | 14,037.52 |
| FUTA | --- | --- | --- | 3,337.83 | 3,337.83 |
| Sec. 6651(a)(1) | --- | --- | --- | 834.46 | 834.46 |
| Sec. 6662 | --- | --- | --- | 667.57 | 667.57 |
| Total | 25,443.00 | 25,443.00 | 25,443.00 | 30,282.86 | 106,611.86 |

In his pretrial memorandum, respondent conceded that he has mistakenly applied both the section 6651(a)(1) addition to tax and the section 6662 accuracy-related penalty to the periods ended September 30 and December 31, 2000, and March 31, June 30, September 30, and December 31, 2001, and provided the following revised numbers:

Taxable period ended 2000

| Tax/addition/penalty | Mar. 31 | June 30 | Sept. 30[1] | Dec. 31 | Total |
|---|---|---|---|---|---|
| FICA | $6,200.18 | $6,200.18 | $6,200.18 | $6,200.18 | $24,800.72 |
| Income tax | 11,346.72 | 11,346.72 | 11,346.72 | 11,346.72 | 45,386.88 |
| Sec. 6651(a)(1) | --- | --- | 4,386.73 | 4,386.73 | 8,773.46 |
| Sec. 6662 | 3,509.28 | 3,509.28 | --- | --- | 7,018.56 |
| FUTA | --- | --- | --- | 3,337.83 | 3,337.83 |
| Sec. 6651(a)(1) | --- | --- | --- | 843.33 | 843.33 |
| Total | 21,056.18 | 21,056.18 | 21,056.18 | 26,114.79 | 90,160.78 |

[1]The entries in the designated column do not add up to the total shown for the column.  Respondent will have to clarify the extent of his concession in a Rule 155 computation.

Taxable period ended 2001

| Tax/addition/penalty | Mar. 31 | June 30 | Sept. 30 | Dec. 31[1] | Total[1] |
|---|---|---|---|---|---|
| FICA | $6,200.17 | $6,200.17 | $6,200.17 | $6,200.17 | [2]$24,800.88 |
| Income tax | 11,346.72 | 11,346.72 | 11,346.72 | 11,346.72 | 45,386.88 |
| Sec. 6651(a)(1) | 4,386.73 | 4,386.73 | 4,386.73 | 4,386.73 | 17,546.92 |
| FUTA | --- | --- | --- | 3,337.83 | 3,337.83 |
| Sec. 6651(a)(1) | --- | --- | --- | 843.33 | 843.33 |
| Total | 21,933.62 | 21,933.62 | 21,933.62 | 26,958.11 | 92,758.97 |

[1]The entries in the designated columns do not add up to the total shown for the column.  Respondent will have to clarify the extent of his concession in a Rule 155 computation.

[2]The entries in this row do not add up to the total shown for the row. Respondent will have to clarify the extent of his concession in a Rule 155 computation.

After concessions,[2] the issues for decision are:

(1)  Whether Richard D. Rudd, Sr., Richard D. Rudd, Jr., Sherilyn J. Gallegos, George Gallegos III, Sean L. Turner, Gary W. Neilson, Shanna Rudd, Brian Welling, and Michael L. Steward (hereinafter the workers) were employees of petitioner during 2000 and 2001; and

---

[2]Petitioner does not directly address respondent's revised adjustments regarding the sec. 6662 accuracy-related penalty or the additions to tax under sec. 6651(a) in its briefs. Therefore, we will deem petitioner to have conceded these adjustments if we conclude that respondent's determination regarding the classification of the workers is sustained.  See Rule 151(e)(4) and (5); Petzoldt v. Commissioner, 92 T.C. 661, 683 (1989).

(2) whether petitioner is entitled to relief under the Revenue Act of 1978, Pub. L. 95-600, sec. 530, 92 Stat. 2885, as amended (act section 530).

FINDINGS OF FACT

The parties stipulated some of the facts. The stipulated facts are incorporated herein by this reference. Petitioner's principal place of business was in Northglenn, Colorado, when its petition was filed. During the periods at issue, petitioner was a corporation that operated a muffler shop in the State of Colorado.[3]

Petitioner had filed Forms 941, Employer's Quarterly Federal Tax Return, and Forms 940, Employer's Annual Federal Unemployment (FUTA) Tax Return, and had issued Forms W-2, Wage and Tax Statement, to its employees for taxable periods ending before 2000.[4] However, during 2000, petitioner took the position that it was no longer required to file Forms 940 and 941 because it had no employees, and it requested refunds of the taxes reported on Forms 940 and 941 for 1997 and 1998. In January 2001, respondent

---

[3]During the trial, Ms. Rudd claimed that petitioner had been dissolved but offered no credible evidence to support her claim. In contrast, respondent's revenue agent Beth Nichols testified that petitioner advertised its business in the Yellow Pages during the periods at issue and during the audit and that petitioner was listed, and continues to be listed, in the phone book.

[4]Petitioner filed Forms 941 for the periods ended Mar. 31 and June 30, 2000, on which it reported no wages and no tax liability.

refunded $88,000 to petitioner.[5]  Subsequently, respondent suspected that the refund was erroneous and began an audit of petitioner's employment tax compliance.[6]  Respondent's revenue agent Beth Nichols conducted the audit from approximately spring 2001 to 2003 when respondent issued the notice of determination. During the examination, Revenue Agent Nichols unsuccessfully attempted to obtain petitioner's books and records, including its bank records, from petitioner's agent, Dolores Rudd.  After discovering that petitioner was using bank accounts in other names, Revenue Agent Nichols summoned the bank records from those accounts.[7]  Revenue Agent Nichols analyzed the bank records and conducted additional investigation of petitioner's business activities.  On the basis of her analysis, Revenue Agent Nichols concluded that petitioner was still in business[8] and that

---

[5]Petitioner subsequently filed a refund claim for its 1999 employment taxes, which respondent ultimately denied.

[6]In 2002, the United States instituted legal proceedings against petitioner for the return of the erroneous refund.

[7]Respondent summoned bank records for accounts not in petitioner's name but in the names of entities traceable to petitioner and into which petitioner's receipts were deposited. Respondent traced activity in those accounts to petitioner's business location and attributed the activity to petitioner for tax purposes.

[8]Petitioner does not dispute that business activity similar to petitioner's regular business activity in 1999 occurred at petitioner's business location in 2000 and 2001.  Ms. Rudd testified that at least some of the same workers who performed services for Colorado Mufflers in 1999 performed similar services at petitioner's business location in 2000 and 2001.

petitioner was periodically cashing large checks written to cash.[9] Because Revenue Agent Nichols had no payroll records for petitioner for 2000 and 2001, she relied on the best information available to her--the Forms W-2, 940, and 941 from 1999--to calculate the wages paid and tax owed by petitioner for 2000 and 2001.

On November 26, 2003, respondent issued a notice of determination to petitioner in which he determined that petitioner had nine workers during 2000 and 2001 whom it should have treated as employees, that petitioner was not entitled to relief under act section 530, that petitioner was liable for income tax withholding, FICA and FUTA tax, the section 6651(a)(1) addition to tax, and the section 6662 accuracy-related penalty for each of the periods involved. Petitioner filed a timely petition challenging the determinations.

On January 25, 2006, respondent filed requests for admission with this Court and mailed a copy to petitioner. However, because the certificate of service used an address for petitioner that was different from the address for petitioner in the Court's files, we served a copy of the requests for admission on petitioner at its address as shown in the Court's files on January 30, 2006. See Rule 90.

---

[9]Revenue Agent Nichols testified that in her experience, a pattern of periodically cashing large checks written to cash suggested a practice of paying workers in cash.

On February 10, 2006, petitioner filed a motion for a protective order from respondent's discovery because "Justice requires that the Petitioner be protected from annoyance, further embarrassment, further undue burden and expense at least until the Respondent provides the proof/evidence of personal jurisdiction". Petitioner's motion for protective order was denied on February 22, 2006.

Under Rule 90(c), respondent's requests for admission are deemed admitted unless, within 30 days of service of the request, the party to whom the request is directed serves upon the requesting party (1) a written answer specifically admitting or denying the matter involved in whole or in part, or asserting that it cannot be truthfully admitted or denied and setting forth in detail the reasons why this is so, or (2) an objection, stating in detail the reasons therefor. Petitioner's response was due on March 1, 2006. Petitioner did not respond to respondent's requests for admission by the deadline set forth in Rule 90(c),[10] and consequently, the matters contained therein were deemed admitted as of March 1, 2006. See Rule 90(c); Freedson v.

---

[10]Petitioner mailed a document to this Court entitled "Petitioner's Reply to Respondent's First Requests for Admission", which we received on Apr. 6, 2006. The document had a certificate of service indicating that it had been sent to respondent's counsel more than a month after the deadline established under Rule 90(c). Consequently, the document was not filed.

Commissioner, 65 T.C. 333, 334 (1975), affd. 565 F.2d 954 (5th Cir. 1978).  The deemed admissions establish the following:

! The nine workers listed in the notice of determination worked at petitioner's business location during the years in issue.

! Petitioner hired, supervised, and paid the workers for their services.

! Petitioner dictated when, where, and how the workers performed their services, and petitioner set their work hours.

! Petitioner controlled the amount of time each worker spent performing services.

! Each worker was employed full time by petitioner and was restricted from working for another employer.

! The workers provided services on petitioner's premises and used petitioner's tools, materials, and equipment.

! The success or continuation of petitioner's business depended upon the performance of the nine workers' services.

! The workers were regularly paid by the hour, week, or month; they were not paid by job or on commission, nor did they realize a profit or loss as a result of their services.

! Both petitioner and the workers had the right to terminate the relationship.

**!** Petitioner and the workers believed themselves to be entering into an employment relationship. They represented to others that an employment relationship existed.

We issued a notice setting case for trial to petitioner. The notice advised petitioner that a trial would be held during the Denver, Colorado, trial session of this Court beginning on April 17, 2006. Included with the notice was our standing pretrial order, which set forth in considerable detail the requirements imposed on each party for adequate trial preparation. Petitioner did not comply with the standing pretrial order in that petitioner did not cooperate with respondent in pretrial preparation, and petitioner did not exchange trial exhibits with respondent. Moreover, petitioner did not produce information and documents in response to respondent's discovery requests. However, petitioner did file a pretrial memorandum that was filled with arguments that can fairly be characterized as frivolous and groundless.

OPINION

I. Relief From Deemed Admissions

Generally, a fact that is deemed admitted under Rule 90 is conclusively established. Rule 90(f); see also Sarchapone v. Commissioner, T.C. Memo. 1983-446. Rule 90(f) provides, however, that the Court, on motion, may permit an admission to be withdrawn or modified if (1) the withdrawal or modification would

subserve the presentation of the merits of the case, and (2) if the party obtaining the admission (respondent in this case) fails to satisfy the Court that the withdrawal or modification will prejudice him in prosecuting his case or defense on the merits. Petitioner did not move for relief from the deemed admissions at any time before or during trial. Petitioner requested relief from the deemed admissions for the first time in its posttrial brief.

Petitioner's agent, Dolores Rudd, who testified for petitioner at trial, attempted to explain petitioner's failure to file a timely response. The explanation was conclusory and unconvincing and did not establish the elements for relief required by Rule 90. Because we find that respondent reasonably relied upon the deemed admissions and that withdrawal of the deemed admissions would not foster presentation of the merits and would unfairly prejudice respondent, we shall deny petitioner's belated request for relief from the deemed admissions. See Dahlstrom v. Commissioner, 85 T.C. 812, 819 (1985); Morrison v. Commissioner, 81 T.C. 644, 649-650 (1983).

## II.  Classification of Petitioner's Workers

### A.  Burden of Proof

Ordinarily, the Commissioner's determination is presumed to be correct, and the taxpayer bears the burden of proving that the determination is erroneous. Rule 142(a); Welch v. Helvering, 290

U.S. 111, 115 (1933).  This principle applies to the

Commissioner's determination that a taxpayer's workers are

employees.  <u>Boles Trucking, Inc. v. United States</u>, 77 F.3d 236,

239-240 (8th Cir. 1996); <u>Allen v. Commissioner</u>, T.C. Memo. 2005-

118.

In certain circumstances, special statutory rules may apply

to shift the burden of proof to the Commissioner.  See, e.g.,

sec. 7491; act sec. 530(e)(4).[11]  However, petitioner does not

contend that these provisions affect an allocation of the burden

of proof in this case, and we conclude that they do not apply.

Petitioner does argue, however, that respondent's

determinations are arbitrary and capricious and that, therefore,

the burden of proof must shift to respondent.[12]  See <u>United States</u>

<u>v. Janis</u>, 428 U.S. 433, 441-442 & n.8 (1976) (burden of proof

shifts to Commissioner where determination lacks rational

foundation).  However, petitioner has failed to demonstrate that

respondent acted arbitrarily in this case.  Petitioner's behavior

during the audit and the pretrial preparation of this case was

characterized by a consistent lack of cooperation and by

considerable obfuscation designed to prevent respondent from

---

[11]Subsec. (e) was added to act sec. 530 by the Small
Business Job Protection Act of 1996, Pub. L. 104-188, sec.
1122(a), 110 Stat. 1766.

[12]Sec. 7491, which authorizes a shift in the burden of proof
if certain requirements are met, applies only to taxes imposed by
subtit. A or B and does not apply to employment taxes imposed by
subtit. C.

ascertaining the facts regarding petitioner's business, business payroll, and workers. It appears that petitioner used fictitious names and/or other companies to hide the nature and extent of its business activity from respondent during the years at issue. Respondent's determinations were necessarily based on the best information available, including information obtained from a visit to petitioner's business location, a review of petitioner's Forms W-2, 940, and 941 for prior taxable periods, an analysis of bank records of petitioner and others, and information obtained from at least one of petitioner's suppliers. We conclude, therefore, that respondent's determinations were not arbitrary or capricious, and the burden of proof remains with petitioner.

B. <u>Employment Status</u>

The employment tax sections of the Internal Revenue Code are in subtitle C. Under subtitle C, an employer is obligated to pay certain taxes imposed on employers and must also withhold from employees' wages certain taxes imposed on employees. Sections 3111 and 3301 impose the employer-level taxes under FICA and FUTA, respectively. Section 3101 imposes a FICA tax on employees, which section 3102 requires the employer to collect. Section 3402 requires an employer to withhold from employees' wages the employees' shares of Federal income tax and to deposit the amounts withheld with the Internal Revenue Service. An

employer is liable for the amounts required to be withheld if the employer does not withhold as required.  Sec. 3403.

For employment tax purposes, the term "employee" includes "any individual who, under the usual common law rules applicable in determining the employer-employee relationship,[13] has the status of an employee".  Sec. 3121(d)(2); accord sec. 3306(i). In applying the common law rules, uncertainty should be resolved in favor of employment.  Breaux & Daigle, Inc. v. United States, 900 F.2d 49, 52 (5th Cir. 1990).

---

[13]Secs. 31.3121(d)-1(c)(2) and 31.3306(i)-1(b), Employment Tax Regs., define an employer-employee relationship as follows:

> Generally such relationship exists when the person for whom services are performed has the right to control and direct the individual who performs the services, not only as to the result to be accomplished by the work but also as to the details and means by which that result is accomplished.  That is, an employee is subject to the will and control of the employer not only as to what shall be done but how it shall be done. In this connection, it is not necessary that the employer actually direct or control the manner in which the services are performed; it is sufficient if he has the right to do so.  The right to discharge is also an important factor indicating that the person possessing that right is an employer.  Other factors characteristic of an employer, but not necessarily present in every case, are the furnishing of tools and the furnishing of a place of work, to the individual who performs the services.  In general, if an individual is subject to the control or direction of another merely as to the result to be accomplished by the work and not as to the means and methods for accomplishing the result, he is an independent contractor.  * * *

See also sec. 31.3401(c)-1(b), Employment Tax Regs. (using virtually identical language).

In evaluating whether an employment relationship exists between a business and one of its workers, the courts consider the following factors to decide whether a worker is a common law employee or an independent contractor: (1) The degree of control exercised by the principal; (2) which party invests in the work facilities used by the individual; (3) the opportunity of the individual for profit or loss; (4) whether the principal can discharge the individual; (5) whether the work is part of the principal's regular business; (6) the permanency of the relationship; and (7) the relationship the parties believed they were creating. Ewens & Miller, Inc. v. Commissioner, 117 T.C. 263, 270 (2001); Weber v. Commissioner, 103 T.C. 378, 387 (1994), affd. per curiam 60 F.3d 1104 (4th Cir. 1995). All of the facts and circumstances of each case are considered, and no single factor is dispositive. Ewens & Miller, Inc. v. Commissioner, supra at 270; Weber v. Commissioner, supra at 387. We consider the factors below.

1. Degree of Control

While no single factor is dispositive, the degree of control exercised by the principal over the details of the individual's work is one of the most important factors in determining whether a common law employment relationship exists. See, e.g., Clackamas Gastroenterology Associates, P.C. v. Wells, 538 U.S. 440, 448 (2003); Leavell v. Commissioner, 104 T.C. 140, 149

(1995). The degree of control necessary to find employee status varies with the types of services provided by the worker. Weber v. Commissioner, supra at 388. However, the control factor does not require a supervisor to stand over and direct every move made by the worker; it is sufficient if the supervisor has the right to do so. Id.; see sec. 31.3401(c)-1(b), Employment Tax Regs.

Deemed admissions confirm that petitioner exercised control over each of the nine workers. Petitioner directed when, where, and how each worker was to perform services. Petitioner controlled the manner in which the workers performed. Petitioner set each worker's work hours and controlled the amount of time each person worked.

This factor favors an employment relationship.

2. Investment in Facilities

The fact that a worker provides his or her own tools generally indicates independent contractor status. Breaux & Daigle, Inc. v. United States, supra at 53. Respondent determined that the workers provided services using petitioner's equipment. The deemed admissions establish that petitioner supplied the facility, equipment, and parts the workers used to perform their services.

This factor favors an employment relationship.

3. <u>Opportunity for Profit or Loss</u>

Respondent determined that petitioner paid the workers in cash every week. Although Ms. Rudd summarily disputed respondent's determination, she provided no credible evidence of petitioner's finances and expenditures for 2000 or 2001. In contrast, the deemed admissions establish that petitioner paid the individuals by the hour, week, or month for their services, that petitioner did not pay the workers by the job or on commission, and that the workers did not participate in the profit or loss resulting from their services.

This factor favors an employment relationship.

4. <u>Right To Discharge</u>

The deemed admissions establish that petitioner had the right to hire and fire each of the workers. Petitioner did not introduce any credible evidence to the contrary.

This factor favors an employment relationship.

5. <u>Petitioner's Regular Business</u>

Ms. Rudd testified that the services performed at petitioner's location during 2000 and 2001 were the same kind of services that petitioner offered in 1999. Petitioner's regular business in 1999 was the operation of a muffler shop. Petitioner

hired workers to provide services as part of its regular business activity.[14]

This factor favors an employment relationship.

6.   Permanency of the Relationship

The deemed admissions establish that the workers were employed full time during 2000 and 2001.  In addition, the record establishes that at least some of the workers had performed services for petitioner and at petitioner's location in prior years.

This factor favors an employment relationship.

7.   Relationship the Parties Believed They Were Creating

The deemed admissions establish that petitioner and the workers believed they had created an employment relationship and that petitioner and the workers consistently presented their relationship as an employment relationship.

This factor favors an employment relationship.

8.   Conclusion

After reviewing the record and weighing the factors, we conclude that petitioner has failed to prove that respondent's determination treating the workers as petitioner's employees was in error.

---

[14]Ms. Rudd admitted that at least some of the workers provided services during 2000 and 2001.

III. <u>Act Section 530 Relief</u>

Act section 530 grants relief from the obligation to pay employment taxes to employers who incorrectly treat wage payments to employees as payments to independent contractors if certain requirements are met.  Act section 530(a)(1) provides in relevant part:

>      (1) In general.--If--
>
>      (A) for purposes of employment taxes, the taxpayer did not treat an individual as an employee for any period * * *, and
>
>      (B) in the case of periods after December 31, 1978, all Federal tax returns (including information returns) required to be filed by the taxpayer with respect to such individual for such period are filed on a basis consistent with the taxpayer's treatment of such individual as not being an employee,
>
>      then, for purposes of applying such taxes for such period with respect to the taxpayer, the individual shall be deemed not to be an employee unless the taxpayer had no reasonable basis for not treating such individual as an employee.

Act section 530(a)(3) limits the relief available under act section 530(a)(1) by providing that act section 530 relief is not available if the "taxpayer (or a predecessor)" treated any individual holding a "substantially similar position as an employee".  An employer must satisfy all of the requirements of act section 530 to qualify for relief under that section.  See <u>Ewens & Miller, Inc. v. Commissioner</u>, 117 T.C. 263 (2001).

Petitioner treated all of the workers as employees in 1999, and petitioner filed Forms W-2, 940, and 941 for 1999 consistent

with its treatment of the workers as employees. Consequently, petitioner fails to satisfy all of the act section 530 requirements. Petitioner is not entitled to relief under act section 530.[15]

IV. Section 6673 Penalty

Section 6673(a)(1) authorizes this Court to require a taxpayer to pay to the United States a penalty, not to exceed $25,000, if it appears that the taxpayer has instituted or maintained a proceeding primarily for delay or that the taxpayer's position is frivolous or groundless. Although respondent has not asked the Court to impose a penalty under section 6673(a)(1), the Court may sua sponte impose such a penalty against a taxpayer. See Pierson v. Commissioner, 115 T.C. 576, 580-581 (2000).

In its opening brief, petitioner argued that Forms 940, 941, and W-2 and Form W-4, Employee's Withholding Allowance Certificate, are invalid because they lack an Office of Management and Budget (OMB) number. Petitioner also listed

---

[15]Petitioner argues that respondent failed to provide notice of act sec. 530 to it as required by act sec. 530(e)(1). Because in any event petitioner did not satisfy the act sec. 530 requirements before the examination, it was not prejudiced by any lack of notice. See Nu-Look Design, Inc. v. Commissioner, 356 F.3d 290, 295 (3d Cir. 2004), affg. T.C. Memo. 2003-52. Moreover, petitioner was informed of act sec. 530 in the notice of determination of worker classification. See id. (relief under due process clause not warranted where notice of determination of worker classification advised taxpayer of safe harbor provisions of act sec. 530 and procedure for challenging determination).

multiple ways respondent's forms allegedly violated the Paperwork Reduction Act (PRA).  Petitioner repeatedly failed to cooperate with respondent because respondent allegedly failed to prove a delegation of authority, and petitioner repeated the delegation of authority argument in its reply brief.  Petitioner also argued that even if the workers in question were its employees, they received nontaxable income and not wages.  Finally, petitioner questioned the validity of the notice of determination because it "did not contain any statutes telling the Petitioner what statutes created the duty that it must pay someone else's taxes."

The courts have consistently held all of these arguments to be frivolous and without merit.  See James v. United States, 970 F.2d 750, 753 n.6 (10th Cir. 1992) (rejecting taxpayer's arguments regarding invalid OMB numbers and violations of PRA); Wilcox v. Commissioner, 848 F.2d 1007, 1008 (9th Cir. 1988) (rejecting taxpayer's arguments that wages are not income), affg. T.C. Memo. 1987-225; Wheeler v. Commissioner, T.C. Memo. 2006-109 (rejecting taxpayer's arguments regarding validity of notice of deficiency); Nunn v. Commissioner, T.C. Memo. 2002-250 (rejecting challenge to Internal Revenue Service jurisdiction over taxpayers and documents).  We warned petitioner's agent on at least two occasions that if petitioner continued to raise frivolous arguments, we would impose a penalty under section 6673.  After each warning, petitioner continued to assert its frivolous

arguments.  Accordingly, we award a penalty of $3,000 to the United States.

To reflect the foregoing,

<u>The decision will be entered under Rule 155</u>.