T.C. Memo. 1998-361

UNITED STATES TAX COURT

J. MICHAEL JOLY AND BONNIE B. JOLY, JODY STEVEN JOLY,
AND DAVID ANDREW JOLY, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 5985-97.                    Filed October 5, 1998.

J. Michael Joly and Jody Steven Joly, pro se.

<u>Stephen J. Neubeck</u>, for respondent.

MEMORANDUM OPINION

DINAN, <u>Special Trial Judge</u>:  This case was heard pursuant to
the provisions of section 7443A(b)(3) and Rules 180, 181, and
182.[1]

_____

[1]     Unless otherwise indicated, all section references are
to the Internal Revenue Code in effect for the taxable years in
issue.  All Rule references are to the Tax Court Rules of
Practice and Procedure.

Respondent determined deficiencies in petitioners' Federal income taxes and accuracy-related penalties for the years as follows:

Petitioners J. Michael Joly and Bonnie B. Joly

| Year | Deficiency | Accuracy-Related Penalty |
|------|------------|--------------------------|
| 1992 | $5,478 | $1,096 |
| 1993 | 3,464 | 693 |
| 1994 | 1,951 | 390 |

Petitioner Jody Steven Joly

| Year | Deficiency |
|------|------------|
| 1993 | $1,020 |
| 1994 | 1,583 |

Petitioner David Andrew Joly

| Year | Deficiency |
|------|------------|
| 1992 | $2,143 |

After concessions, the issues remaining for decision are: (1) Whether certain amounts paid to or on behalf of J. Michael Joly and Jody Steven Joly by J. Michael Joly, Inc. constitute employee wages; (2) the correct method of computing the amounts of the losses and gains that J. Michael Joly, Jody Steven Joly, and David Andrew Joly must recognize with respect to their J. Michael Joly, Inc. stock; and (3) whether J. Michael Joly and Bonnie B. Joly are liable for the section 6662(a) accuracy-related penalties.

Some of the facts have been stipulated and are so found. The stipulations of fact and attached exhibits are incorporated

herein by this reference.  J. Michael Joly (Michael), Bonnie B. Joly (Bonnie), and David Andrew Joly (David) resided in Centerville, Ohio, and Jody Steven Joly (Jody) resided in Kettering, Ohio, on the date the petition was filed in this case.

Michael and Bonnie were husband and wife during the taxable years in issue.  They have four sons, James, Jody, David, and Adam.

Over the past 35 years, Michael has developed an excellent reputation in the Dayton, Ohio, area for his development and construction of custom homes.  He has been listed as one of the top 10 builders by the Home Builders Association for over 15 years.  Because of his reputation, Michael does not need to advertise for business but rather secures new customers by referrals.

In the latter part of 1982, Michael decided to incorporate his then sole proprietorship as J. Michael Joly, Inc. (the corporation) to take advantage of both the perceived tax benefits and the limitation of his personal liability.  The corporation elected to be treated as an S corporation for Federal income tax purposes.

The corporation developed and constructed single-family, custom homes.  Michael served as the corporation's president during its entire existence.  He was the primary reason for the corporation's success in attracting customers before and during the taxable years in issue.  He was responsible for negotiating

all of the arrangements and devising the plans for the development of new projects before and during the taxable years in issue.

Jody began working for the corporation at the beginning of 1993. He served as its vice president and worked as its overall manager of operations. As part of his management responsibility, he coordinated the hiring of independent contractors who were to perform construction work at the project sites. Jody also worked as the lead carpenter on many of the homes built during 1993 and 1994.

Prior to 1993, Jody had worked as a senior auditor for Reliance Electric Company. He studied accounting at Ohio State University and business administration at Xavier University, including some courses in taxation.

David was a student during the taxable years in issue. At the time of trial, he was attending medical school. He has never worked for the corporation.

Michael owned 100 percent of the corporation's stock when it was incorporated in 1982. In subsequent years, he caused the corporation to issue 30 percent of the stock to be held by his sons in varying amounts. During the taxable years in issue, Michael, Jody, and David held the corporation's stock as follows:

| Year | Michael | Jody | David |
|------|---------|------|-------|
| 1992 | 70% | --- | 30% |
| 1993 | 70% | 30% | --- |
| 1994 | 70% | 30% | --- |

The corporation did not maintain books and records by which its shareholders' respective bases in their stock could be determined, primarily as a result of Michael's failure to keep such records. Michael, Jody, and David have not proved their bases in their corporate stock, other than zero, as of the beginning of their taxable years in issue.

In the statutory notice of deficiency, respondent determined that Michael contributed $35,800, $68,413.75, and $43,696 with respect to his stock in the corporation during 1992, 1993, and 1994, respectively, and has since conceded that Michael contributed an additional $12,964 during 1992. Jody and David made no contributions with respect to their stock. Petitioners have not disproved respondent's determinations of their contributions with respect to their stock. The amounts determined by respondent will, therefore, be used in the Rule 155 computation.

Michael caused the corporation to regularly issue checks from its bank account in payment of the family members' personal expenses. Relying on the corporation's bank statements, respondent determined that the following amounts were paid to or on behalf of the corporation's shareholders:

| Year | Michael | Jody | David |
|------|---------|------|-------|
| 1992 | $83,526.53 | --- | $25,784.81 |
| 1993 | 98,515.43 | $19,224 | --- |
| 1994 | 65,082.10 | 23,415 | --- |

These amounts differ slightly from the amounts determined in the statutory notices of deficiency. The amounts listed as paid by the corporation to or on behalf of Michael include amounts paid by it to or on behalf of Bonnie, James, and Adam and to or on behalf of Jody and David for the taxable years during which Jody and David were not shareholders. We have considered and reject petitioners' arguments that portions of these amounts constitute loans from the corporation to the shareholders and/or family members. No loan documents or other records showing the existence or amounts of the alleged loans were presented at trial, and the corporation's Forms 1120S for 1992, 1993, and 1994 do not show any loans on the Schedules L (balance sheets). Accordingly, the amounts listed above shall be used in the Rule 155 computation.

Michael ceased to operate in the corporate form and resumed designing and building homes as a sole proprietor shortly after respondent's examination of petitioners' and the corporation's tax returns for 1992, 1993, and 1994.

The first issue for decision is whether any portions of the amounts paid to or on behalf of Michael and Jody constitute employee wages. Respondent's determinations in the statutory notices of deficiency are presumed to be correct, and petitioners bear the burden of proving otherwise. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933).

On November 14, 1989, Michael entered into an agreement with the corporation, acting on behalf of the corporation in his capacity as its president.  The agreement stated that the sole compensation for his services would be his share of the corporation's profits.  Under the agreement, Michael was permitted to withdraw monetary advances of anticipated profits.  The advances were to be treated as a loan on the corporation's books to the extent they exceeded the corporation's profits.

On December 2, 1991, Jody entered into a similar agreement with the corporation with Michael acting on the corporation's behalf as its president.  Michael stated at trial that the copy of the agreement submitted to the Court was amended subsequent to its execution but maintained that the substance of the document was not changed by the added language.  On brief, Michael admitted that Jody was "somewhat oblivious of the exacting parameters" of the agreement.

Respondent argues that the aforementioned agreements should be disregarded and that portions of the amounts paid to or on behalf of Michael and Jody should be treated as employee wages earned with respect to their personal services rendered to the corporation.  Respondent contends that Michael used these agreements to avoid paying employment taxes under the Federal Insurance Contributions Act (1954), ch. 736, 68A Stat. 415, currently codified at 26 U.S.C. secs. 3101-3128 (1994) on the amounts paid to or on behalf of himself and Jody.  See secs.

3101, 3111. Petitioners maintain that none of the amounts paid to or on behalf of Michael and Jody constitute employee wages. They argue that respondent's treatment of portions of such amounts as employee wages is arbitrary.

Section 3121(d) provides that the term "employee" means:

(1) any officer of a corporation; or

(2) any individual who, under usual common law rules applicable in determining the employer-employee relationship, has the status of an employee; * * *

We first consider whether Michael and Jody provided services to the corporation as employees under common-law rules. Nationwide Mut. Ins. Co. v. Darden, 503 U.S. 318, 322-325 (1992). Whether an individual is a common-law employee is a question of fact. Weber v. Commissioner, 103 T.C. 378, 386 (1994), affd. per curiam 60 F.3d 1104 (4th Cir. 1995).

Among the relevant factors to be considered in deciding the nature of the employer-employee relationship are the following: (1) The degree of control exercised by the principal over the details of the work; (2) which party invests in the facilities used in the work; (3) the hired party's role in hiring and paying assistants; (4) the permanency of the relationship between the parties to the relationship; (5) the extent of the hired party's discretion over when and how long to work; (6) whether the work performed is an integral part of the principal's business; (7) the relationship the parties believe they are creating; and (8) the provision of benefits typical of those provided to employees.

Nationwide Mut. Ins. Co. v. Darden, supra at 323-324; Weber v. Commissioner, supra at 387; Simpson v. Commissioner, 64 T.C. 974, 984-985 (1975). No one factor is determinative; rather, all the incidents of the relationship must be assessed and weighed. Nationwide Mut. Ins. Co. v. Darden, supra at 324; NLRB v. United Ins. Co., 390 U.S. 254, 258 (1968); Azad v. United States, 388 F.2d 74, 76 (8th Cir. 1968); Weber v. Commissioner, supra at 387; Simpson v. Commissioner, supra at 985.

The record does not support petitioners' argument that the services which Michael and Jody provided to the corporation were insubstantial. During 1992, Michael was solely responsible for managing and operating the business. During 1993 and 1994, while Jody took over some daily responsibilities, Michael continued to negotiate all of the arrangements and financing, developed the plans for the custom homes, and reviewed the progress at the construction sites. Jody performed management functions and worked for the corporation as the lead carpenter on many of its projects.

Moreover, Michael and Jody were employees of the corporation by virtue of having been officers of the corporation (president and vice president, respectively), and having provided more than minor services to it. Sec. 31.3121(d)-1(b), Employment Tax Regs. On this record, we conclude that Michael and Jody rendered substantial services to the corporation as employees.

We must next decide what constitutes reasonable compensation for the services performed by Michael and Jody as employees. Petitioners, relying on the agreements described supra, maintain that it is reasonable for Michael and Jody to have received no salaries for their services as employees. In the statutory notices of deficiency, respondent determined that the following amounts paid to or on behalf of Michael and Jody constitute employee wages:

| Year | Michael | Jody |
|------|---------|------|
| 1992 | $46,000 | --- |
| 1993 | 86,000 | $16,705 |
| 1994 | 61,000 | 23,415 |

Initially, we reject petitioners' claim that the failure to pay employee wages to Michael and Jody is reasonable. We find that the characterization in the aforementioned agreements of the amounts paid to or on behalf of Michael and Jody do not reflect the true character of such payments. See Joseph Radtke, S.C. v. United States, 712 F. Supp. 143 (E.D. Wis. 1989), affd. per curiam 895 F.2d 1196 (7th Cir. 1990).

The question left for us to decide is what constitutes reasonable compensation for the personal services actually rendered by Michael and Jody as employees. Sec. 162(a)(1); Roob v. Commissioner, 50 T.C. 891, 898 (1968); sec. 1.162-7, Income Tax Regs. Whether compensation is reasonable is a question to be resolved on the basis of an examination of all the facts and circumstances of the case. Kennedy v. Commissioner, 671 F.2d

167, 173 (6th Cir. 1982), revg. 72 T.C. 793 (1979); Mayson Manufacturing Co. v. Commissioner, 178 F.2d 115, 119 (6th Cir. 1949), revg. a Memorandum Opinion of this Court.

The Court of Appeals for the Sixth Circuit, the court to which an appeal in this case lies, has adopted a set of basic factors to be considered by the Court in deciding the reasonableness of compensation: (1) The employee's qualifications; (2) the nature, extent, and scope of the employee's work; (3) the size and complexities of the employer's business; (4) a comparison of salaries paid with the employer's gross and net income; (5) the prevailing general economic conditions; (6) a comparison of salaries paid with distributions of retained earnings; (7) the prevailing rates of compensation for comparable positions in comparable concerns; (8) the salary policy of the employer as to all employees; and (9) in the case of small corporations with a limited number of officers, the amount of compensation paid to the particular employee in previous years. Kennedy v. Commissioner, supra at 173-174; Mayson Manufacturing Co. v. Commissioner, supra. The facts must be considered as a whole with no single factor decisive. Mayson Manufacturing Co. v. Commissioner, supra.

Petitioners urge the Court to find that respondent erred in determining that any amounts of employee wages were paid to Michael and Jody. In other words, they do not argue that a finding of lesser amounts of employee wages would be more

appropriate and, due primarily to their failure to introduce any corporate books and records, have not presented any credible evidence upon which lesser amounts of employee wages may be determined. Respondent's determinations were based on the only records available, the corporation's bank statements, from which respondent determined that regular payments were made to and on behalf of Michael and Jody.

The record firmly establishes the fact that Michael was the driving force behind the corporation's business during the taxable years in issue. At trial, Michael acknowledged his reputation as being highly regarded in the construction industry and his role as the corporation's "rainmaker". We are not convinced that Michael's participation in the corporation's activities was drastically reduced after 1992. We believe that he remained in complete control of the corporation even after Jody began working for it. Jody's role in the corporation, while not as influential as his father's, certainly would have demanded the modest salary that respondent determined he received.

After carefully considering the factors listed above, we find that respondent's determinations of the amounts of Michael's and Jody's employee wages for the taxable years in issue constitute reasonable compensation for the services which they provided to the corporation as employees during such years.

We hold that Michael and Jody received employee wages from the corporation in the amounts determined by respondent.[2]

The second issue we must decide is the correct method of computing the amounts of losses and gains that Michael, Jody, and David must recognize with respect to their stock in the corporation.

In general, section 1366(a)(1) provides that a shareholder shall take into account his pro rata share of an S corporation's:

> (A) items of income * * *, loss, deduction, or credit the separate treatment of which could affect the liability for tax of any shareholder, and

> (B) nonseparately computed income or loss.

Section 1366(d)(1) limits the aggregate amount of losses and deductions that may be taken into account by a shareholder under section 1366(a) for any taxable year to:

> (A) the adjusted basis of the shareholder's stock in the S corporation (determined with regard to paragraph (1) of section 1367(a) for the taxable year), and

> (B) the shareholder's adjusted basis of any indebtedness of the S corporation to the shareholder * * *.

---

[2] As a result of the additional deductions allowed to the corporation in the amounts which we have held are properly treated as employee wages, the corporation sustained net losses instead of the reported net income for the taxable years in issue. We find that the amounts of the net losses, after taking into account respondent's uncontested adjustments to the corporation's costs of goods sold, are $34,122, $57,579, and $36,888 for 1992, 1993, and 1994, respectively.

Any losses or deductions disallowed for any taxable year by section 1366(d)(1) are treated as incurred by the S corporation in the succeeding taxable year with respect to that shareholder. Sec. 1366(d)(2). Accordingly, subject to the section 1366(d)(1) limitation, Michael, Jody, and David are entitled to their pro rata shares of the corporation's losses.[3]

Section 1368 provides that, in the case of an S corporation which has no accumulated earnings and profits, a distribution of property made with respect to its stock is treated as gain from the sale or exchange of property to the extent the amount of the distribution exceeds the adjusted basis of the stock. Sec. 1368(a) and (b).

Taking into account the total amounts paid to or on behalf of Michael, Jody, and David during the taxable years in issue, supra p. 5, and the portions of such amounts which we have held to be employee wages, supra p. 10, we find that the amounts distributed to them with respect to their stock are as follows:

| Year | Michael | Jody | David |
|------|---------|------|-------|
| 1992 | $37,526.53 | --- | $25,784.81 |
| 1993 | 12,515.43 | $2,519 | --- |
| 1994 | 4,082.10 | --- | --- |

---

[3] In addition, we find that Michael, Jody, and David are entitled to deductions for their pro rata shares of the corporation's separately stated charitable contributions in the amounts of $3,788, $3,270, and $2,370, for 1992, 1993, and 1994, respectively. Secs. 1363(b)(1), 1366(a)(1); see sec. 702(a)(4). Michael, Jody, and David concede that they must include in their gross income their pro rata shares of the corporation's separately stated interest income, as determined by respondent.

After reviewing the statutory notices of deficiency and subsequent computations referred to supra, we find that respondent has not adjusted Michael's, Jody's, and David's adjusted bases in their stock in accordance with the applicable law. For the taxable years in issue, a shareholder's adjusted basis in the stock of an S corporation is: (1) Increased by the shareholder's pro rata share of the corporation's income; (2) decreased by the shareholder's pro rata share of the corporation's losses and deductions; and (3) decreased by the amount of the shareholder's section 1368 distributions. Sec. 1367; sec. 1.1367-1(e), Income Tax Regs. Respondent erroneously flip-flopped steps (2) and (3) by decreasing the adjusted bases by the amounts of the shareholders' distributions before decreasing the adjusted bases by the amounts of the shareholders' pro rata shares of losses and deductions.[4]

We hold that the amounts of Michael's, Jody's, and David's recognized losses and gains with respect to their stock in the corporation must be computed in a manner consistent with the law in effect during the taxable years in issue, as explained supra.

_____

[4] For taxable years beginning after Dec. 31, 1996, the Small Business Job Protection Act of 1996, Pub. L. 104-188, sec. 1309(a)(1), 110 Stat. 1755, 1783, amended the parenthetical language in sec. 1366(d)(1)(A) to read "(determined with regard to paragraphs (1) and (2)(A) of section 1367(a) for the taxable year)". The effect of this amendment was to change the order of the basis adjustments to that used by respondent in the statutory notices of deficiency. See H. Rept. 104-586, at 89 (1996), 1996-3 C.B. 331, 427. This amendment, however, is not applicable to the taxable years in issue.

The third issue for decision is whether Michael and Bonnie are liable for the section 6662(a) accuracy-related penalty for negligence for 1992, 1993, and 1994.  Respondent's determinations of negligence are presumed to be correct, and petitioners bear the burden of proving that the penalties do not apply.  Rule 142(a); Welch v. Helvering, 290 U.S. at 115; Bixby v. Commissioner, 58 T.C. 757, 791-792 (1972).

Section 6662(a) imposes a 20-percent penalty on the portion of an underpayment attributable to any one of various factors, one of which is negligence or disregard of rules or regulations. Sec. 6662(b)(1).  Respondent determined that Michael and Bonnie are liable for the accuracy-related penalty imposed by section 6662(a) for their underpayments of taxes in 1992, 1993, 1994, and that such underpayments were due to negligence or disregard of rules or regulations.  "Negligence" includes a failure to make a reasonable attempt to comply with the provisions of the Internal Revenue laws or to exercise ordinary and reasonable care in the preparation of a tax return.  Sec. 6662(c); sec. 1.6662-3(b)(1), Income Tax Regs.  "Disregard" includes any careless, reckless, or intentional disregard of rules or regulations.  Sec. 6662(c); sec. 1.6662-3(b)(2), Income Tax Regs.

Section 6664(c)(1), however, provides that the penalty under section 6662(a) shall not apply to any portion of an underpayment, if it is shown that there was reasonable cause for the taxpayer's position with respect to that portion of the

underpayment and that the taxpayer acted in good faith with respect to that portion. The determination of whether a taxpayer acted with reasonable cause and in good faith is made on a case-by-case basis, taking into account all the pertinent facts and circumstances. Sec. 1.6664-4(b)(1), Income Tax Regs. The most important factor is the extent of the taxpayer's effort to assess his proper tax liability for the year. Id.

Based on the record, we find that Michael and Bonnie have not proved that their underpayments were due to reasonable cause or that they acted in good faith. We hold that Michael and Bonnie are liable for the section 6662(a) accuracy-related penalty for 1992, 1993, and 1994.

To reflect the foregoing,

Decision will be entered

under Rule 155.