T.C. Memo. 2013-180

UNITED STATES TAX COURT

GLASS BLOCKS UNLIMITED, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 3396-11.                    Filed August 7, 2013.

Fredrick Blodgett (an officer), for petitioner.

<u>Michael K. Park</u>, <u>Kirk M. Paxson</u>, and <u>Patricia P. Wang</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

HALPERN, <u>Judge</u>:  This case is before the Court on a petition for
redetermination of a notice of determination of worker classification (notice).  By
the notice, respondent informed petitioner that he had determined that Fredrick
Blodgett is classified as petitioner's employee for Federal employment tax

**[*2]** purposes for each of the four quarters of 2007 and 2008 and that petitioner is not entitled to relief under the Revenue Act of 1978, Pub. L. No. 95-600, sec. 530, 92 Stat. at 2885, as amended (section 530). Attached to the notice is a schedule setting forth petitioner's liabilities for (1) Federal Insurance Contributions Act (FICA) taxes pursuant to sections 3101 and 3111, (2) additions to tax pursuant to section 6651(a)(1),[1] and (3) penalties pursuant to section 6656, as follows:

| Tax period ended | Employment tax | Addition to tax sec. 6651(a)(1) | Penalty sec. 6656 |
|---|---|---|---|
| 3/2007 | $1,179.78 | $448.32 | $58.99 |
| 6/2007 | 1,179.78 | 430.62 | 58.99 |
| 9/2007 | 1,179.78 | 412.92 | 58.99 |
| 12/2007 | 1,179.78 | 395.23 | 58.99 |
| 3/2008 | 1,210.38 | 387.33 | 60.52 |
| 6/2008 | 1,210.38 | 369.17 | 60.52 |
| 9/2008 | 1,210.38 | 351.01 | 60.52 |
| 12/2008 | 1,210.38 | 332.86 | 60.52 |

Petitioner does not challenge respondent's determinations that Mr. Blodgett should be classified as petitioner's employee or that it is not entitled to relief under

---

[1]Except with reference to the Revenue Act of 1978, Pub. L. No. 95-600, sec. 530, 92 Stat. at 2885, section references are to the Internal Revenue Code in effect for the taxable periods at issue. All Rule references are to the Tax Court Rules of Practice and Procedure.

**[*3]** section 530 but disputes the tax liabilities set forth in the notice. The issues for decision are (1) whether, and to what extent, petitioner's distributions totaling $30,844 and $31,644 for 2007 and 2008, respectively, to Mr. Blodgett should be recharacterized as wages subject to Federal employment tax; (2) whether petitioner is liable for the additions to tax under section 6651(a)(1); and (3) whether petitioner is liable for the penalties under section 6656.

Petitioner bears the burden of proof. See Rule 142(a).[2]

## FINDINGS OF FACT

Petitioner is an S corporation within the meaning of section 1361(a)(1). It is a calendar year taxpayer that makes its Federal income tax return on Form 1120S, U.S. Income Tax Return for an S Corporation. At the time the petition was filed, petitioner's principal place of business was in Costa Mesa, California. During 2007 and 2008, petitioner operated a business that sold and distributed "glass blocks" for the real estate market in North America. During those years, Mr. Blodgett was president of petitioner, and he was its sole shareholder.

He worked full time for petitioner, which had no other full-time employees. He was responsible for all operational and financial decisions of the company, and

---

[2]Sec. 7491, which shifts the burden of proof to the Secretary in certain circumstances, does not apply to employment tax disputes. See sec. 7491(a)(1).

[*4] he performed nearly all of the work necessary to run the business. Petitioner additionally used an unspecified number of day laborers, whom it paid totals of $39,733 and $41,453 in 2007 and 2008, respectively.

Following a downturn in the real estate and construction markets after 2005, petitioner's business began to experience financial difficulties, and Mr. Blodgett transferred funds to petitioner in order to cover operating expenses and other costs. In 2007, Mr. Blodgett transferred $30,000 from his family trust to petitioner. Deborah R. Vancleave, Mr. Blodgett's fiance at the time, contributed $15,000 to petitioner in 2007 and an additional $10,000 in 2008. Petitioner did not give any collateral to Mr. Blodgett with respect to the transfers, and no promissory notes reflecting the transfers were issued.

Petitioner did not on its 2007 and 2008 Forms 1120S report paying Mr. Blodgett a salary or wages. It did, however, distribute money to him as cash was available and he asked for it. Petitioner distributed not less than $30,844 to Mr. Blodgett over the course of 2007. During 2008, petitioner made distributions to Mr. Blodgett totaling not less than $31,644.

On its 2007 Form 1120S, petitioner reported gross receipts of $832,579, total income of $308,516, and net ordinary business income of $877. Petitioner also reported repayment of $29,132 of loans from shareholders. On Schedule L,

[*5] Balance Sheets Per Books, petitioner reported that the corporation did not have any outstanding loans from shareholders at the beginning of the year and had a balance of $12,868 in loans from shareholders at the end of the year.

On its 2008 Form 1120S, petitioner reported gross receipts of $701,338, total income of $257,638, and net ordinary business income of $8,950. Petitioner reported repayment of $8,391 of loans from shareholders. Petitioner's reported loans from shareholders balance decreased from $12,868 at the beginning of the year to $4,477 at the end of the year. Petitioner also reported dividend distributions totaling $21,078.

Mr. Blodgett did not have any other employment during 2007 or 2008. On his 2007 Form 1040, U.S. Individual Income Tax Return, he reported $877 of subchapter S income from petitioner and $11 in taxable interest from a bank account. On his 2008 Form 1040, he reported $8,950 of subchapter S income from petitioner and no other income for that year.

Petitioner did not file a Form 941, Employer's Quarterly Federal Tax Return, for any quarter in 2007 or 2008. Petitioner did not issue a Form W-2, Wage and Tax Statement, or Form 1099-MISC, Miscellaneous Income, to Mr. Blodgett for 2007 or 2008.

**[\*6]** Respondent conducted an employment tax audit for petitioner's 2007 and 2008 tax years, determined that Mr. Blodgett should be classified as petitioner's employee and that the distributions should be characterized as wages for employment tax purposes, and issued the notice. Petitioner timely filed a petition with this Court.

## OPINION

I. Introduction

Petitioner, an S corporation, distributed $30,844 and $31,644 in 2007 and 2008, respectively, to Mr. Blodgett, its president, sole shareholder, and only full-time employee. Respondent determined that the distributions constituted wages for which FICA taxes should have been paid.

We have jurisdiction under section 7436(a) to decide whether respondent's determination of worker classification is correct and to decide the proper amount of employment tax, including additions to tax and penalties, under that determination. See also Ewens & Miller, Inc. v. Commissioner, 117 T.C. 263, 267-268 (2001).

[*7] II.     Employment Taxes

    A.    In General

Sections 3101 and 3111 impose FICA taxes on wages received with respect to employment. The FICA tax is a tax on wages (up to an annual limit) that comprises a 12.4% Social Security tax and a 2.9% Medicare tax. Secs. 3101, 3111. One half of the FICA tax is imposed on the employer, see sec. 3111, and the other half on the employee, see sec. 3101. Section 3102(a) requires an employer to withhold from wages the amount of the tax imposed on its employee, and the employer is liable for paying the tax it is required to so withhold. Sec. 3102(b).

For employment tax purposes, wages are defined as "all remuneration for employment, including the cash value of all remuneration (including benefits) paid in any medium other than cash", with exceptions not applicable in this case. Sec. 3121(a). Notwithstanding the manner in which an employer characterizes payments made to an employee, the critical fact is whether a payment is actually received as remuneration for employment. Sec. 31.3121(a)-1(c), Employment Tax Regs.; see also Charlotte's Office Boutique, Inc. v. Commissioner, 121 T.C. 89, 104 (2003), aff'd, 425 F.3d 1203 (9th Cir. 2005). An officer who performs more than minor services for a corporation and who receives remuneration in any form

**[*8]** for those services is considered an employee, and his or her wages are subject to the employer's payment of Federal employment taxes. <u>Veterinary Surgical Consultants, P.C. v. Commissioner</u>, 117 T.C. 141, 145 (2001), <u>aff'd sub nom.</u> <u>Yeagle Drywall Co. v. Commissioner</u>, 54 Fed. Appx. 100 (3d Cir. 2002); <u>see also</u> sec. 3121(d)(1); sec. 31.3121(d)-1(b), Employment Tax Regs.

Petitioner does not object to respondent's determination that Mr. Blodgett was its employee during the periods at issue, and the evidence clearly supports such a finding. As president of the company, Mr. Blodgett was petitioner's only officer. Mr. Blodgett was also petitioner's sole full-time worker in 2007 and 2008. He performed substantially all of the work necessary to operate the business, including processing orders, collecting payments, arranging shipment of goods, managing inventory, and handling customer relations. His services generated all of petitioner's income.

Because Mr. Blodgett was petitioner's employee for the periods at issue and performed substantial services for it yet it did not pay him a salary, its distributions to him are deemed wages and thus are subject to Federal employment taxes. <u>Veterinary Surgical Consultants, P.C. v. Commissioner</u>, 117 T.C. at 145-146; <u>see also</u> <u>Spicer Accounting, Inc. v. United States</u>, 918 F.2d 90, 93 (9th Cir. 1990). That petitioner characterized $21,078 of those distributions as dividends

**[\*9]** for 2008 is immaterial. An employer cannot avoid Federal employment taxes by characterizing payments to its sole employee, officer, and shareholder as dividends, rather than wages, where such payments represent remuneration for services rendered.[3] Spicer Accounting, Inc., 918 F.2d at 93.

B.      Distributions Not Repayment of Shareholder Loans

Petitioner contends that certain distributions represented repayment of loans between itself and Mr. Blodgett and, as such, should not be recharacterized as wages. According to petitioner, transfers of funds totaling $45,000 in 2007 and $10,000 in 2008 from Mr. Blodgett (or his fiance, on his behalf) were loans to petitioner and the distributions were merely repayment of those loans. Respondent argues that the funds were contributions to capital and the distributions constitute wages to Mr. Blodgett.

The proper characterization of the transfers as either loans or capital contributions is made by reference to all the evidence. See Dixie Dairies Corp. v. Commissioner, 74 T.C. 476, 493 (1980); see also Herrera v. Commissioner, T.C.

---

[3]Because Mr. Blodgett was an officer of petitioner during the periods in issue, sec. 530 relief is unavailable. See Joseph M. Grey Pub. Accountant, P.C. v. Commissioner, 119 T.C. 121, 131-132 (2002) (holding that sec. 530 relief is limited to controversies regarding the employment tax status of service providers under the common law and does not apply with respect to statutory employees, such as corporate officers), aff'd, 93 Fed. Appx. 473 (3d Cir. 2004).

**[*10]** Memo. 2012-308, at *13.  Petitioner bears the burden of proving that the transfers were loans.  See Rule 142(a); see also Dixie Dairies Corp. v. Commissioner, 74 T.C. at 493.  Courts have established a nonexclusive list of factors to consider when evaluating the nature of transfers of funds to closely held corporations.  Such factors include:  (1) the names given to the documents that would be evidence of the purported loans; (2) the presence or absence of a fixed maturity date; (3) the likely source of repayment; (4) the right to enforce payments; (5) participation in management as a result of the advances; (6) subordination of the purported loans to the loans of the corporation's creditors; (7) the intent of the parties; (8) the capitalization of the corporation; (9) the ability of the corporation to obtain financing from outside sources; (10) thinness of capital structure in relation to debt; (11) use to which the funds were put; (12) the failure of the corporation to repay; and (13) the risk involved in making the transfers.  Calumet Indus., Inc. v. Commissioner, 95 T.C. 257, 285 (1990).

The factors are not equally significant, and no single factor is determinative.  Ultimately, we must determine whether the transfer, analyzed in terms of economic reality, constitutes risk capital entirely subject to the fortunes of the corporate venture or a strict debtor-creditor relationship.  Dixie Dairies Corp. v. Commissioner, 74 T.C. at 493-494; Herrera v. Commissioner, at *14.  Transfers to

[*11] closely held corporations by controlling shareholders are subject to heightened scrutiny, however, and the labels attached to such transfers by the controlling shareholder through bookkeeping entries or testimony have limited significance unless these labels are supported by other objective evidence. E.g., Boatner v. Commissioner, T.C. Memo. 1997-379, 1997 WL 473162, at *3, aff'd without published opinion, 164 F.3d 629 (9th Cir. 1998).

Applying the above factors, we find that the transfers in question were capital contributions and not bona fide loans. There were no written agreements or promissory notes supporting Mr. Blodgett's testimony that the transfers were loans. While it is true that a portion of the transfers was reported as loans from shareholders on petitioner's Forms 1120S, that entry is of little value without the support of other objective criteria. Indeed, petitioner did not even report the $10,000 transfer as a shareholder loan on its 2008 return. The absence of notes or other instruments, plus petitioner's failure to treat the $10,000 transfer as a loan at all, indicates that the transfers were not loans.

Moreover, there is no evidence that Mr. Blodgett required interest for the use of the funds, that petitioner provided any security for the loan, or that a fixed repayment schedule existed. Mr. Blodgett withdrew funds solely on the basis of petitioner's financial ability to repay. Where the expectation of repayment

**[*12]** depends solely on the success of the borrower's business, rather than on an unconditional obligation to repay, the transaction has the appearance of a capital contribution. See, e.g., Roth Steel Tube Co. v. Commissioner, 800 F.2d 625, 631 (6th Cir. 1986), aff'g T.C. Memo. 1985-58.

On the basis of the evidence, we conclude that the funds Mr. Blodgett transferred to petitioner were, in substance, capital contributions and not bona fide loans. Therefore, petitioner's distributions did not represent repayment of shareholder loans.

C. Reasonableness of Compensation

Petitioner also contends that characterization of all distributions from petitioner to Mr. Blodgett as wages would constitute unreasonable compensation to him. Claiming that he worked only 20 hours per week, performing "minimal and undemanding" duties for which no training or special skills were required, petitioner proposes that we find $15,860 to be a reasonable annual salary. Petitioner directs us to the wage and salary information reported on various salary-reporting Web sites to support its assertion that no more than $15.25 per hour would be an appropriate wage, then multiplies that wage by an alleged 1,040 hours worked each year.

[*13] Reasonableness of compensation is a question determined by all the facts and circumstances of the case. E.g., Joly v. Commissioner, T.C. Memo. 1998-361, 1998 WL 712528, at *4, aff'd without published opinion, 211 F.3d 1269 (6th Cir. 2000). Factors affecting the reasonableness of compensation include the employee's role in the company, comparisons of the employee's salary to those paid by similar companies for similar services, the character and condition of the company, and potential conflicts of interest.[4] Elliotts, Inc. v. Commissioner, 716 F.2d 1241, 1245-1246 (9th Cir. 1983), rev'g T.C. Memo. 1980-282. The evidence in this case does not convince us that the amounts respondent recharacterized as wages constitute unreasonable compensation for the services Mr. Blodgett performed.

First, we do not find petitioner's evidence persuasive. Even if we were to accept the salary information petitioner submitted as reliable (and we decline to do so), petitioner has failed to show that the positions for which it has provided salary information are sufficiently analogous to Mr. Blodgett's position with petitioner.

---

[4]Although reasonable compensation is an issue typically found in the context of income tax deductions under sec. 162, courts have found that reasonableness analysis is at times appropriate in determining whether certain payments were in fact remuneration for employment subject to FICA tax. See, e.g., David E. Watson, P.C. v. United States, 668 F.3d 1008, 1017-1018 (8th Cir. 2012).

**[*14]** Petitioner directs the Court to statistics concerning the median hourly wages of a shipping clerk, an accounts receivable clerk, and an accounts payable clerk, plus the average annual salary for officers of S corporations in the wholesale durables business. Mr. Blodgett's role in petitioner's business, however, was more substantial than any one of those positions. Rather, he performed all of those roles within the company and, through his efforts, generated all of petitioner's sales and income for the periods at issue.

Moreover, we do not accept that Mr. Blodgett worked only 20 hours per week. Mr. Blodgett told his examiner during the audit for petitioner's 2007 and 2008 tax years that he worked over 40 hours per week. Petitioner's own Web site states that petitioner's hours were 8 a.m. to 5 p.m. Monday through Friday during 2007 and 2008. In the absence of other evidence substantiating Mr. Blodgett's later testimony that he worked only 20 hours per week, we give that testimony little weight. Thus, even assuming arguendo that petitioner's proposed finding of $15.25 per hour is a reasonable wage for an employee in Mr. Blodgett's position, such a finding would in fact support the conclusion that $30,844 and $31,644 were reasonable for a full-time employee.

Accordingly, petitioner has not carried its burden to show that the amounts respondent determined are unreasonable compensation.

[*15] III.    Additions to Tax and Penalties

Respondent determined that petitioner is liable for additions to tax under section 6651(a)(1) for its failure to file Forms 941 for the periods at issue and penalties under section 6656 for its failure to deposit the requisite amount of tax for those quarters.  Section 6651(a)(1) imposes an addition to tax in the event a taxpayer fails to file a timely return (determined with regard to any extension of time for filing) unless the taxpayer shows that such failure is due to reasonable cause and not due to willful neglect.  The amount of the addition is equal to 5% of the amount of the tax required to be shown on the delinquent return for each month or fraction thereof during which the return remains delinquent, up to a maximum of 25% for returns more than four months delinquent.  Sec. 6651(a)(1).

Section 6656 imposes a penalty equal to 10% of the portion of an underpayment in tax that is required to be deposited if the failure to deposit is more than 15 days beyond the prescribed deadline, unless it is shown that such failure is due to reasonable cause and not to willful neglect.  Sec. 6656(a) and (b).

It is undisputed that petitioner filed no employment tax returns and deposited no employment taxes with the Treasury.  Petitioner has not offered any argument that respondent's determinations of the additions and penalties are incorrect or inappropriate, nor has petitioner argued that its failure to file returns

**[\*16]** or to deposit employment tax was due to reasonable cause and not to willful neglect.

Respondent has shown adequate ground for imposing the penalties and additions. Consequently, we sustain respondent's determination that petitioner is liable for the section 6651(a)(1) additions to tax and the section 6656 penalties for all periods at issue.

IV.    Conclusion

We sustain respondent's determinations of worker classification, Federal employment tax deficiencies, penalties, and additions to tax.

To reflect the foregoing,

Decision will be entered for respondent.