T.C. Memo. 2021-86

UNITED STATES TAX COURT

BLOSSOM DAY CARE CENTERS, INC., Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket Nos. 3868-12, 3869-12.[1]          Filed July 13, 2021.

Steven P. Flowers and Nathalie M. Cornett, for petitioner.

William F. Castor and Vassiliki Economides Farrior, for respondent.

---

[1]These cases were consolidated for trial, briefing, and opinion. The subject of this opinion will pertain to those issues arising out of docket No. 3869-12. Those issues arising out of docket No. 3868-12 are addressed in Blossom Day Care Ctrs., Inc. v. Commissioner, T.C. Memo. 2021-87, filed today.

[*2]      MEMORANDUM FINDINGS OF FACT AND OPINION

PARIS, Judge:  This case is before the Court on a petition for redetermination of employment status filed pursuant to section 7436.[2]  In a notice of determination of worker classification dated November 14, 2011, respondent determined that Blossom Day Care Centers, Inc. (petitioner or Blossom), had not classified its corporate officers as employees for all taxable periods of calendar years 2005 through 2008.  Respondent determined that Barry A. Hacker and Celeste Hacker (Hackers) were to be legally classified as petitioner's "employees" for all taxable periods of calendar years 2005 through 2008 and that petitioner is not entitled to relief under the Revenue Act of 1978, Pub. L. No. 95-600, sec. 530, 92 Stat. at 2885.  Respondent also determined that petitioner is liable for employment taxes, penalties under section 6656 for failure to deposit tax, and accuracy-related penalties under section 6662(a) for negligence.  Attached to the notice are schedules setting forth petitioner's liabilities for (1) Federal Insurance Contribution Act (FICA) pursuant to sections 3101 and 3111, (2) Federal Unemployment Tax Act (FUTA) taxes pursuant to section 3301, (3) penalties for

---

[2]Unless otherwise noted, all section references are to the Internal Revenue Code in effect at all relevant times.  All Rule references are to the Tax Court Rules of Practice and Procedure.

[*3] failure to deposit tax pursuant to section 6656, and (4) accuracy-related

penalties under section 6662(a) for negligence, summarized as follows:

|  |  |  |  | Penalties |
| --- | --- | --- | --- | --- |
| Tax periods | Type of tax | Amount | Sec. 6656 | Sec. 6662(a) |
| 3/31 to 12/31/2005 | 941 | $80,686.80 | $1,419.36 | $16,137.36 |
| 2005 | 940 | 868.00 | 86.80 | 173.60 |
| 3/31 to 12/31/2006 | 941 | 84,800.20 | 1,487.38 | 16,960.03 |
| 2006 | 940 | 868.00 | 86.80 | 173.60 |
| 3/31 to 12/31/2007 | 941 | 88,852.20 | 1,545.12 | 17,770.44 |
| 2007 | 940 | 868.00 | 86.80 | 173.60 |
| 3/31 to 12/31/2008 | 941 | 93,372.00 | 1,618.60 | 18,674.40 |
| 2008 | 940 | 868.00 | 86.80 | 173.60 |

After concessions,[3] the issues for decision are whether: (1) the Hackers

should be legally classified as employees of petitioner such that petitioner is liable

for employment tax (FICA) and unemployment tax (FUTA) relating to wages paid

to the Hackers for all tax periods in 2005, 2006, 2007, and 2008; (2) petitioner is

---

[3]Petitioner does not assert it is entitled to relief under the Revenue Act of 1978, Pub. L. No. 95-600, sec. 530, 92 Stat. at 2885, given the Hackers' corporate officer status.

[*4] liable for FICA and FUTA taxes on the basis of respondent's determination that the Hackers had additional wage income from petitioner in 2005, 2006, 2007, and 2008 of $209,200, $220,210, $231,800, and $244,000, respectively; (3) petitioner is liable for a failure to deposit penalty under section 6656 with respect to the FICA and FUTA tax liabilities respondent determined for the taxable periods from 2005 through 2008; and (4) petitioner is liable for accuracy-related penalties under section 6662(a) with respect to the FICA and FUTA tax liabilities determined by respondent for the taxable periods from 2005 through 2008.

## FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The parties filed a first stipulation of facts and six supplemental stipulations of facts with accompanying exhibits that are incorporated herein by this reference.

Background

Petitioner was an Oklahoma corporation, originally incorporated in 1986, with its principal place of business in Tulsa, Oklahoma, at the time the petition was filed in this case. Petitioner was a valid corporation in the State of Oklahoma during all periods at issue.

[*5] Petitioner did business as Blossom Day Care Centers and operated five child care centers in the Tulsa metropolitan area from 2004 through May 2005 and six child care centers from May 2005 through December 2008.

At all relevant times and since 1986, the Hackers were petitioner's only corporate officers. Mr. Hacker has always served as petitioner's vice president, secretary, and treasurer. Mrs. Hacker has always served as petitioner's president. There were no other corporate officers. In addition, the Hackers were petitioner's sole shareholders, Mrs. Hacker owning 51% and Mr. Hacker owning 49% of petitioner's stock.

In October 2002 the Hackers, as sole shareholders, incorporated Hacker Corp. and had it elect to be taxed as a small business corporation (S corporation) pursuant to section 1362. Petitioner was not a shareholder in Hacker Corp. In May 2005 petitioner conveyed to Hacker Corp. by quitclaim deed certain real estate locations of Blossom Day Care Centers. The Hackers have asserted that the purpose of Hacker Corp. was to provide property and services management to petitioner, the only client of the S corporation. On its returns petitioner claimed deductions of management fees paid to Hacker Corp. in the following amounts in the years at issue: $342,650 in 2005, $378,484 in 2006, $0 in 2007, and $204,514 in 2008.

**[\*6]** There is no written agreement as to the purpose of the management fees, but Hacker Corp. did pay total salary to the Hackers from 2005 through 2008 of $73,848, $40,000, $53,847, and $58,462, respectively, for services provided to Hacker Corp., which were arguably for management of petitioner. Petitioner asserts that whatever services the Hackers performed for Blossom Day Care Centers were actually provided under a purported oral management agreement between petitioner and Hacker Corp. for the benefit of Blossom Day Care Center, and it was not petitioner's responsibility to provide reasonable compensation to its corporate officers, the Hackers, for services provided to petitioner.

Involvement of the Hackers

Before petitioner was incorporated, Mrs. Hacker, having received an associate's degree in child development, opened her own day care center which in turn became the basis for the incorporation of Blossom Day Care Centers. From 1986 and through the years at issue, Mrs. Hacker served not only as petitioner's president but also as the director of curriculum and education for the 90 employees, students, and six locations for Blossom Day Care Centers. She served as Blossom's top manager, personally overseeing and supervising employees, including hiring and firing and managing Blossom's six day care directors, with all of petitioner's employees ultimately reporting to her.

**[*7]** Mr. Hacker, also since 1986 and through all the years at issue, served not only as petitioner's corporate vice president but also as its secretary and treasurer. During the years at issue Mr. Hacker also served as the director of the Blossom Day Care Centers and as director of accountability and finance for petitioner. Mr. Hacker had authority over all of petitioner's bank accounts, and his daily responsibilities included, but were not limited to, depositing parents' payments for child care into petitioner's bank accounts and personally writing all of the payroll checks to petitioner's 90 employees.

Both Mr. and Mrs. Hacker were members of the Oklahoma Child Care Association, and Mr. Hacker was a member of its board from 2004 through 2008. This State organization focused on child care issues, working with the Oklahoma Department of Human Services (ODHS) regarding comments on regulations, training, and education. Petitioner's daycare locations were licensed by ODHS, and the Hackers were responsible for ensuring the programs and employees met ODHS standards.

During the tax periods at issue, 2005 through 2008, the Hackers controlled all of petitioner's child care policies and education, and coordinated all physical location and program maintenance decisions. Both actively participated in petitioner's daily operation, frequently working 50 to 60 hours per week at all

[*8] levels, including those duties described above, as well as paperwork and front office duties, classroom teaching and supervision of teachers, purchasing and delivering food for petitioner's child care programs, and even maintenance and custodial duties, if needed.

Wages, Salary, or Other Compensation of Mr. and Mrs. Hacker

Petitioner did not report paying a salary or wages to either Mr. or Mrs. Hacker on its Forms 1120, U.S. Corporation Income Tax Return, for tax years 2005 through 2008. It did report paying compensation to officers of $100,000 in 2006, but not for the other years at issue.[4] In addition, petitioner maintained vehicles titled in the Hackers' names including loan payments and maintenance for a 2000 Lexus and a 2003 Hummer. Petitioner claimed depreciation for those autos on its corporate tax returns for 2005 through 2008. In addition, petitioner maintained vehicles it did not own, for the benefit of the Hackers' children and a parent and a sibling. Petitioner provided multiple credit cards in the names of Mr. Hacker and Mrs. Hacker and for their children. Petitioner paid personal expenditures for their benefit that were not petitioner's business expenses.

---

[4]The parties agree that petitioner made no actual cash payments to its corporate officers as compensation during 2006.

**[\*9]**  Petitioner did pay salaries and wages to its other employees and did file timely Forms 941, Employer's Quarterly Federal Tax Return, for all calendar quarters from 2005 through 2008.  Petitioner also filed timely Forms 940, Employer's Annual Federal Unemployment (FUTA) Tax Return, for tax years 2005 through 2008.  Petitioner, consistent with its assertion that the Hackers provided services pursuant to an oral management agreement with Hacker Corp., did not issue to Mr. Hacker or Mrs. Hacker or file with the Internal Revenue Service (IRS) Forms W-2, Wage and Tax Statement, nor did it issue to them or file with the IRS Forms 1099-MISC, Miscellaneous Income.

In addition, petitioner did not include either Mr. Hacker or Mrs. Hacker on the Forms 941 or 940, nor make on their behalf any deposit of employment taxes into any Federal depository for any calendar quarter or annual return for tax years 2005 through 2008.

OPINION

I.    Burden of Proof

The determinations set forth in the Commissioner's notice of determination of worker classification are presumed correct, and the taxpayer bears the burden of proving those determinations are in error.  See Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933); Ewens & Miller, Inc. v. Commissioner, 117 T.C. 263,

[*10] 268 (2001). Petitioner bears the burden of proving that its officers, the Hackers, were not its employees as determined in the notice of determination for the tax periods in issue. Petitioner, a corporation, also bears the burden of proving that it is not liable for the penalties under section 6656 for failure to deposit tax and accuracy-related penalties under section 6662(a) for negligence. See NT, Inc. v. Commissioner, 126 T.C. 191, 194-195 (2006).

II.     Worker Classification

For the purposes of respondent's determination, "employee" is defined for FICA and FUTA purposes to include "any officer of a corporation". See secs. 3121(d)(1) and (2), 3306(i). For purposes of income tax withholding under section 3402, the term "employee" also includes "an officer of a corporation". See sec. 3401(c). FICA and FUTA impose "employment taxes" that employers must pay and are obligated to withhold in addition to income tax withholding under section 3402. Employers are required to make periodic deposits of amounts withheld from employees' wages and amounts corresponding to the employer's share of FICA and FUTA tax. Secs. 6302, 6157; secs. 31.6302-1, 31.6302(c)-3, Employment Tax Regs.

[*11] III.    Petitioner's Corporate Officers

An officer of a corporation who performs more than minor services and receives remuneration for such services is a "statutory" employee for employment tax purposes.  See Joseph M. Grey Pub. Accountant, P.C. v. Commissioner, 119 T.C. 121, 126 (2002), aff'd, 93 F. App'x 473 (3d Cir. 2004); Central Motorplex, Inc. v. Commissioner, T.C. Memo. 2014-207; Glass Blocks Unlimited v. Commissioner, T.C. Memo. 2013-180; Nu-Look Design, Inc. v. Commissioner, T.C. Memo. 2003-52, 85 T.C.M. (CCH) 927, 931 (2003), aff'd, 356 F.3d 290 (3d Cir. 2004); secs. 31.3121(d)-1(b), 31.3306(i)-1(c), 31.3401(c)-1(f), Employment Tax Regs.  An officer can escape statutory employee status only if he performs no services (or only minor services) for that corporation and neither receives nor is entitled to receive any remuneration, directly or indirectly, for services performed. See Veterinary Surgical Consultants, P.C. v. Commissioner, 117 T.C. 141, 144-145 (2001), aff'd sub nom. Yeagle Drywall Co. v. Commissioner, 54 F. App'x 100 (3d Cir. 2002); secs. 31.3121(d)-1(b), 31.3306(i)-1(e), 31.3401(c)-1(f), Employment Tax Regs.

Petitioner has stipulated that the Hackers were corporate officers during all of the calendar quarters and years 2005 through 2008.  Both provided substantial services far beyond minor services, and both directly and indirectly received

[*12] remuneration for their services. Mrs. Hacker was petitioner's 51% shareholder and acted as president of the corporation and director of curriculum and education for all six child care locations and supervised over 90 employees and students of those centers. See Nu-Look Design, Inc. v. Commissioner, 85 T.C.M. (CCH) at 931-932 (characterizing as statutory employee S corporation shareholder who served as corporation's president). Mr. Hacker was 49% shareholder and acted as vice president, secretary, and treasurer; as director of Blossom Day Care Centers; and as director of accounting and finance for petitioner. Both Mr. and Mrs. Hacker had check-signing authority over petitioner's bank accounts and credit card authorization in their corporate capacity.

In addition, Mr. Hacker's daily responsibilities included but were not limited to depositing parents' payments for child care and personally writing all of the payroll checks to petitioner's 90 employees. Both Mr. and Mrs. Hacker provided numerous services to petitioner, any one of which could be considered substantial. Both received direct and indirect remuneration in the form of cars for themselves, a Lexus and a Hummer; cars for their children and relatives; credit cards; and access to all cash distributions.

Petitioner has asserted that it operates under an oral management contract and pays management fees to a related S corporation, Hacker Corp., to provide

[*13] services, and that the Hackers, as employees of Hacker Corp., provide services to petitioner and its day care centers. Whether a corporate officer is performing services in his capacity as an officer is a question of fact. Joseph M. Grey Public Accounting, P.C. v. Commissioner, 119 T.C. at 129-130; Rev. Rul. 82-83, 1982-1 C.B. 151, 152. The conclusion that a corporate officer is a statutory employee may not apply to the extent that he or she performs services in some other capacity. Nu-Look Design, Inc. v. Commissioner, 85 T.C.M. (CCH) at 931-932.

Petitioner did pay Hacker Corp. money classified as management fees on its general ledger for the years at issue in the following amounts: $382,650 in 2005, $378,484 in 2006, $0 in 2007, and $204,514 in 2008. From these management fees, Hacker Corp. paid Form W-2 wages to the Hackers for 2005 through 2008 of $73,848, $40,000, $53,847, and $58,462, supposedly for the services the Hackers were to render to petitioner under an oral management contract. Petitioner has submitted no evidence of a management agreement, either written or oral, with Hacker Corp. Likewise, petitioner has submitted no evidence, written or otherwise, as to a service agreement directing the Hackers to perform substantial services on behalf of Hacker Corp. to benefit petitioner, or even a service or employment agreement between the Hackers and Hacker Corp. Therefore, there is

[*14] no evidence in the record that Mr. Hacker or Mrs. Hacker performed services in a capacity other than as a corporate officer.

The Court finds that the Hackers were both "statutory" employees of petitioner for employment tax purposes for all calendar quarters and years of 2005 through 2008. Having made that determination, the Court is not required to consider whether they would also be classified as "employees" under the common law test. See Nu-Look Design, Inc. v. Commissioner, 356 F.3d at 293.

IV.    Reasonableness of Compensation

Petitioner also contends that, even if the Court determines that its corporate officers are statutory employees, the determination of additional wages paid to the Hackers should be no more than the difference between what was paid to the Hackers as Form W-2 employees of Hacker Corp. and the reasonable wage determinations of respondent. Petitioner's arguments are misguided in that wages paid by Hacker Corp. do not offset reasonable compensation requirements for the services provided by petitioner's corporate officers to petitioner. Whatever wages paid for whatever purposes by Hacker Corp. to the Hackers as employees of the S corporation will be better addressed in relation to respondent's notice of deficiency for the Hackers' individual income tax, in consideration that Hacker Corp. is a wholly owned S corporation.

[*15] Additionally, petitioner contends that the notice of determination is flawed in that the determined compensation reflects requirements of higher educational qualifications than either Mr. Hacker or Mrs. Hacker has achieved, since Mr. Hacker did not graduate from college and Mrs. Hacker has only an associate's degree in child development.  While petitioner has not further developed this contention in its briefs and there was limited trial testimony on the topic, whatever higher educational qualifications might be required have been far eclipsed by the Hackers' practical experience, professional qualifications, success in running day care centers, and ownership prerogatives.

Reasonableness of compensation is a question determined by all the facts and circumstances of the case.  E.g., Glass Blocks Unlimited v. Commissioner, at *13; Joly v. Commissioner, T.C. Memo. 1998-361, 1998 WL 712528, at *4, aff'd without published opinion, 211 F.3d 1269 (6th Cir. 2000).  Factors affecting the reasonableness of compensation include the employee's role in the company, comparisons of the employee's salary to those paid by similar companies for similar services, and the character and condition of the company.  Elliotts, Inc. v. Commissioner, 716 F.2d 1241, 1245-1246 (9th Cir. 1983), rev'g T.C. Memo. 1980-282; see also Pepsi-Cola Bottling Co. of Salina, Inc. v. Commissioner, 528 F.2d 176, 179 (10th Cir. 1975), aff'g 61 T.C. 564 (1974).  The Court does not find

[*16] persuasive petitioner's evidence that the services provided by the Hackers were worth something less than respondent's determination. Once again, although the issue was passingly addressed in evidence at trial, petitioner's briefs have failed to show why respondent's determination is unreasonable and, accordingly, petitioner has not carried its burden to show that the amounts respondent determined are unreasonable compensation.

## V.    Penalties

Respondent determined that petitioner is liable for penalties for failure to deposit tax pursuant to section 6656 and accuracy-related penalties pursuant to section 6662(a) for all periods in issue. Section 6656(a) and (b) imposes a penalty equal to 10% of the portion of an underpayment in tax that is required to be deposited if the failure to deposit is more than 15 days beyond the prescribed deadline, unless it is shown that such failure is due to reasonable cause and not to willful neglect. Section 6662(a) and (b)(1) imposes an accuracy-related penalty equal to 20% of the portion of an underpayment that is attributable to negligence.

Petitioner contends that respondent has not met his burden of production with respect to the penalties because he has not introduced evidence that the initial determination was approved in writing by the immediate supervisor of the individual making the determination, as required by section 6751(b)(1).

**[*17]** Petitioner's argument is misplaced. Section 7491(c), which shifts the burden of production to the Secretary in any court proceeding with respect to liability for any penalty, addition to tax, or additional amount, applies only to individuals. See Povolny Grp., Inc. v. Commissioner, T.C. Memo. 2018-37, at *27. Respondent thus has no burden of production in this case. That burden remains with petitioner.

Nevertheless, a nonindividual taxpayer may raise the lack of supervisory approval as an affirmative defense to penalties. See, e.g., Palmolive Bldg. Inv'rs, LLC v. Commissioner, 152 T.C. 75, 83 (2019); Endeavor Partners Fund v. Commissioner, T.C. Memo. 2018-96, at *63-*64, aff'd, 943 F.3d 464 (D.C. Cir. 2019). Petitioner raised the question of supervisory approval for the first time on brief. It did not raise the affirmative defense in its pleadings, as required under Rule 40, nor has it sought leave to amend its pleadings pursuant to Rule 41.

Moreover, respondent has introduced into evidence a Civil Penalty Approval Form signed on March 31, 2010, by the immediate supervisor of the revenue agent who conducted the examination of petitioner's employment tax liabilities for the periods in issue.[5] The Form reflects that the revenue agent's

---

[5]On October 6, 2017, respondent filed a motion to reopen the record to submit additional evidence. Attached to the motion was, among other documents, (continued...)

[*18] immediate supervisor approved assertion of the failure to deposit penalties under section 6656 and the accuracy-related penalties under section 6662(a) for negligence. There is no evidence in the record to suggest, and petitioner does not contend, that respondent communicated his initial penalty determination to petitioner before the date the examining agent's supervisor signed the penalty approval form. See Clay v. Commissioner, 152 T.C. 223, 249 (2019), aff'd, 990 F.3d 1296 (11th Cir. 2021).

Petitioner does not contest the substance of the penalties, except insofar as it disagrees with respondent's classification of the Hackers as employees and his determination of employment tax liabilities. The Court has sustained respondent's determinations. Petitioner does not claim reasonable cause for the failure to deposit or for the underpayments, and the Court finds that petitioner had none.

Accordingly, the Court holds that petitioner is liable for the section 6656 penalty for failure to deposit tax and section 6662 penalty for negligence for all periods in issue.

---

[5](...continued)
the declaration of Joe W. Cooper, the immediate supervisor of the revenue agent who conducted the examination of petitioner's worker classification and employment tax liabilities for the periods in issue. Also attached to the motion was a Civil Penalty Approval Form, signed by Mr. Cooper and approving the assertion of the penalties at issue in this case. The Court has granted respondent's motion contemporaneously with the filing of this opinion.

**[*19]** VI.    <u>Conclusion</u>

The Court sustains respondent's determination of worker classification,

Federal employment tax deficiencies, and penalties and additions to tax.

To reflect the foregoing,

<u>Decision will be entered for</u>

<u>respondent in docket No. 3869-12</u>.